OPINION OF THE COURT
Joseph J. Maltese, J.
This court is dismissing this criminal court information "in the interest of justice” pursuant to CPL 170.40 and People v Clayton (41 AD2d 204 [2d Dept 1973]).
FACTS
Joann Cantalino, the defendant herein, sued her husband, Carmine Ciro Cantalino, who is a lieutenant in the New York Police Department (NYPD), for a divorce in the Brooklyn Supreme Court in 1992. No divorce has yet been granted. The estranged Lieutenant Cantalino resides with the complainant in Staten Island, New York. Apparently, without benefit of either marriage or a name change, the complainant holds herself out to be Mrs. Jacqueline Cantalino, the name which appears on the Criminal Court complaint and supporting deposition which she signed. However, Jacqueline Cantalino, who is also a New York City police officer, is in reality Jacqueline Danner.
On January 9, 1995 a pendente lite order was issued by Justice William Rigler of the Supreme Court of Kings County. Claiming that Lieutenant Cantalino willfully violated that order, the defendant herein sought an order for contempt to enforce the order of January 9, 1995.
Karen Lasky, a process server on behalf of Joann Cantalino, attempted to personally serve Lieutenant Cantalino with a copy of the order for contempt. In her affidavit of due dili *626 gence, Ms. Lasky states that on May 9, 1995 when she attempted to serve Lieutenant Cantalino at his home she was confronted by a woman who identified herself as Mrs. Jackie Cantalino who grabbed the papers from her hand and refused to return them to her. While it may be argued that this service may have constituted a substituted personal service to a person of "suitable age and discretion” if it was followed by the requisite mailing of CPLR 308 (2), the process server was directed to make actual personal service upon Lieutenant Cantalino.
Ms. Lasky states that she then attempted to serve Lieutenant Cantalino at his place of business, the 26th Precinct Detective Squad in Manhattan. There she claims she met with resistance by other police officers and was thereby unable to have the order served personally upon Lieutenant Cantalino before the time to serve him had expired.
Accordingly, the attorneys for Joann Cantalino then sought another order to show cause and requested that service of the order be made upon Lieutenant Cantalino either personally, by regular mail, or by overnight mail. However, Justice Rigler inserted on the order that service should be done "by nailing to the door * * * of 40 Edison Street, Staten Island, NY 10306 (his last known address) and by mailing copies by regular and certified mail to said address on or before by June 2, 1995.”
On the first of June, equipped with the court order and a hammer to nail the order to the door, Joann Cantalino and her co-worker, Rosalie Perez, who was acting as a process server, attempted to nail the order to the door. However in attempting to do so, they were confronted by Police Officer Jacqueline Danner, also known as Jacqueline Cantalino, the complainant herein, who attempted to prevent Ms. Perez from nailing the order onto the door of the premises which she shares with Lieutenant Cantalino. As a result of this confrontation both Joann Cantalino and Rosalie Perez were arrested. Rosalie Perez was given a desk appearance ticket (docket number 95R6340), but Joann Cantalino was formally processed through the police and criminal court system. She was booked and spent the night in jail awaiting arraignment.
THE CHARGES
The prosecutor alleges in the criminal complaint that the defendant: "did intentionally cause physical injury to [Jacqueline Cantalino] and did intentionally place [her] in reasonable fear of physical injury by displaying a dangerous instrument and *627 did intentionally damage informant’s property while having no right to do so nor any reasonable grounds to believe that she had such a right in that the defendant did pound nails into informant’s front door with a hammer at the above location, thereby placing holes in said door, and further that the defendant did not have permission or authority to damage [Jacqueline Cantalino’s] door, and further, that the defendant did possess and hold a hammer in her hand and did wave said hammer and did strike [Jacqueline Cantalino] in the hand with said hammer and did push and shove the informant thereby placing the informant in reasonable fear of physical injury and causing tenderness to informant’s hand as well as substantial pain annoyance and alarm.”
Additionally, in Jacqueline Cantalino’s supporting deposition she adds that the defendant "did damage [her] screen door (locked) in that the defendant cut through the screen thereby causing damage, and further, that the defendant did not have permission or authority to damage said door.”
As a result of the above, the defendant was charged with: assault in the third degree (Penal Law § 120.00 [1]), menacing in the second degree (Penal Law § 120.14 [1]), criminal possession of a weapon in the fourth degree (Penal Law § 265.01 [2]), criminal mischief in the fourth degree (Penal Law § 145.00 [1]), and harassment (Penal Law § 240.26 [1]).
DISCUSSION
While disputes between estranged husbands and wives and their "significant other” are not uncommon, what is unusual in this case is that the defendant was literally carrying out the order of a Justice of the Supreme Court who ordered the nailing of the order to show cause for contempt to the door of the husband’s residence.
Judge McLaughlin in his Commentaries on the CPLR recognizes that "nail and mail service” actually means "affix and mail service” under CPLR 308 (4) (McLaughlin, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C308:4, at 309).
Professor David Siegel sheds more light on the literal meaning of "affix and mail” stating that: "[i]t should obviously be done in such a way as to avoid damage. A railroad spike is too much. A tack should do nicely * * * A method should be used that ensures 'a genuine adherence’ ” (Siegel, NY Prac § 74 [2d ed]). There is no indication that the defendant knew or would have reason to know that ”nail and mail” service actually means "affix and mail.”
*628 Moreover, Judiciary Law § 761 mandates that where an order of contempt is being sought, "service upon the accused” is required unless the court authorizes service upon his attorney (see, Siegel, NY Prac § 484 [2d ed]). However, the courts have interpreted that "service upon the accused” permits substituted service to include "affix and mail” or where impracticable, court-directed service pursuant to CPLR 308 (5) (New York Higher Educ. Assistance Corp. v Cooper, 65 AD2d 906 [3d Dept 1978]; Department of Hous. Preservation & Dev. v Arick, 131 Misc 2d 950 [Civ Ct, NY County 1986]).
In this order for contempt the words "nail * * * to the door,” not "affix to the door” were inserted in the order by Justice Rigler not the attorneys for Joann Cantalino. Perhaps, by fashioning a specific court-directed method of service which is permissible under CPLR 308 (5), Justice Rigler was sending a stronger message to Lieutenant Cantalino, who he may have believed was avoiding service, than to simply tape or tack the contempt order to his door as is sufficient under CPLR 308 (4).
THE MOTION TO DISMISS "iN THE INTEREST OF JUSTICE”
In order to decide this motion to dismiss "in the interest of justice” this court has considered the factors contained in CPL 170.40 where applicable. Those factors are: (1) the seriousness of the offense; (2) the harm caused by the offense; (3) the evidence of guilt, whether admissible or not; (4) the history, character and condition of the defendant; (5) any exceptional law enforcement misconduct; (6) the purpose and effect of imposing upon the defendant a sentence authorized for the offense; (7) the impact of a dismissal on the safety or welfare of the community; (8) the impact of a dismissal upon the confidence of the public in the criminal justice system; (9) the attitude of the victim with respect to the motion; and (10) any other relevant facts that a conviction would serve no useful purpose.
FINDINGS
Since the defendant and her process server were complying with the literal order of Justice Rigler to nail the court order to the door she is not criminally culpable for the damage sustained to the property herein. Following the specific order of Justice Rigler gave the defendant a reasonable ground to believe that she had the right to do what was reasonably necessary to "nail” the court order to the door.
"A person is guilty of criminal mischief in the fourth degree when, having no right to do so nor any reasonable ground to *629 believe that he has such right, he [or she] * * * [intentionally damages property of another person” (Penal Law § 145.00 [1] [emphasis added]). The defendant clearly did not have the intent required to have committed the crime of criminal mischief in the fourth degree (see, People v Weiss, 276 NY 384 [1938]).
The history of this matter is that the defendant is involved in an acrimonious long-pending matrimonial matter with the paramour of the complainant. This incident was not a serious offense. Moreover, there is no evidence of guilt nor was there any criminal harm. The defendant, who has never been arrested before, is the mother of two children and works as a school bus driver to earn a living.
While the defense alleges abuse of official discretion and police misconduct, that is the subject matter for a different forum. However, the totality of circumstances viewed in the light most favorable to the People reveal that the defendant still had a right to nail the order to the door and any interference by the complainant, who has an interest in the underlying divorce action contributed to the incident. Had Police Officer Danner not been home, the court order would have been nailed to the door. Any recourse she believes she has for the damage that may have been caused by the defendant may be addressed in the Civil Court.
In view of the foregoing, no sentence authorized would be imposed for the criminal mischief (Penal Law § 145.00 [1]) charge. Moreover, the offenses of assault in the third degree (Penal Law § 120.00 [1]), harassment in the second degree (Penal Law § 240.26 [1]), and menacing in the second degree (Penal Law § 120.14 [1]) would not be sustained as there is no demonstrated intent to cause physical injury to Officer Danner or to place her in reasonable fear of physical injury, nor was there any intent to harass, annoy, or alarm her. The Court of Appeals in Matter of Philip A. (49 NY2d 198 [1980]) held that in deciding whether or not there is a sufficient physical injury to constitute an assault that "there is an objective level * * * below which the question is one of law, and the charge should be dismissed” (supra, at 200 [emphasis added]).
The prosecutor will not be able to prove beyond a reasonable doubt that either Ms. Perez or the defendant possessed a hammer with the intent to use it as a dangerous or deadly weapon or that they intended to menace the complainant with it.
In the case at bar, it is apparent that the defendant was using the hammer to carry out the mandate of the Supreme *630 Court, and was thus acting in a lawful manner when she attempted to have the order nailed to the door. Under these circumstances this court does not believe that these facts would be sufficient to prove either charge.
Accordingly, the charges of criminal possession of a hammer as a weapon (Penal Law § 265.01 [2]) and menacing (Penal Law § 120.14 [1]) are not legally sufficient in view of the context of this matter.
Clearly the impact of dismissing this action would have a positive effect on the community and would restore the public’s confidence in the criminal justice system. Indeed to continue this prosecution would demonstrate an abuse of the criminal justice system by those police officers charged with enforcing the law.
While neither the alleged victim, Police Office Danner, nor Lieutenant Cantalino may desire to have this motion granted, no useful purpose would be served by perpetuating this tragic opera, except to exacerbate this situation which inevitably would result in a dismissal.
The criminal court is not to be used as a "side show.” It is now time to move on to the main event, which is the action for divorce in Supreme Court.
Accordingly, this court is exercising its judgment and discretion and is dismissing this criminal information in its entirety "in the interest of justice” pursuant to CPL 170.40. The other relief sought by the defendant is thereby unnecessary and is now moot.