**Christian McGEE, Petitioner,**

v.

**STATE of Alaska, Respondent.**

No. S–11611.

Supreme Court of Alaska.

July 27, 2007.

Colleen A. Libbey, Libbey Law Offices, Anchorage, for Petitioner.

John A. Scukanec, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and David W. Márquez, Attorney General, Juneau, for Respondent.

Before: BRYNER, Chief Justice,
MATTHEWS, EASTAUGH, and FABE,
Justices.

## OPINION

BRYNER, Chief Justice.

### I. INTRODUCTION

Christian McGee was charged with criminal mischief for smashing out the windows of a truck belonging to Wesley Alexander. McGee contended at trial that he broke the windows to protect himself from being run over by Alexander. The Alaska Criminal Code recognizes the defense of necessity but generally treats it as an affirmative defense, which gives the defendant the burden of proving necessity by a preponderance of the evidence. After being instructed that this approach applied to McGee, the jury convicted him of criminal mischief. We reverse. Alaska law specifically defines the essential elements of criminal mischief to require proof of intentional damage to property of another by a person having "no right" to cause the damage "or any reasonable ground to believe" such a right existed. Given this statutory definition of the offense, we conclude that the state bore the burden of proving beyond a reasonable doubt that McGee lacked any reasonable ground to believe that his actions were justified by his need for self-protection.

### II. FACTS AND PROCEEDINGS

#### A. Facts

On October 27, 2001, Donna McGee met Wesley Alexander at the Elks Lodge in Valdez. They eventually went to Donna's trailer home. At around 1:30 a.m., Donna's son, Christian McGee—who then lived at her trailer—returned home.

According to McGee, he began cooking something to eat in the kitchen area when he heard a commotion toward the back of the trailer. His mother soon came out with a "pretty large gash" in her head. McGee also noticed Alexander in back, asleep in the bed. McGee asked his mother what happened, and she replied that she had brought Alexander home. McGee tried to waken Alexander, who, in McGee's words, "got up out of bed ... naked" and "started getting real mouthy, belligerent." McGee "started backing up," but Alexander "took upon himself to decide ... to whoop my [McGee's] ass." The two men wrestled in the hallway and into the kitchen, where Alexander placed McGee in a headlock. McGee managed to free himself and ran from the trailer; as he fled, he heard Alexander say something like "I'm going to run your little punk ass over, you little sorry bastard."

Once outside, McGee grabbed a snow shovel and smashed out the windows of Alexander's pickup truck. McGee claimed that he did so "to make sure [Alexander] couldn't see to hit me." McGee then walked toward the dark end of the trailer court, hoping to avoid Alexander and call police from a neighbor's residence.

The Valdez Police received several 911 calls about the disturbance. As they approached the scene they found McGee in the road walking away from his mother's home. He appeared intoxicated and highly agitated; officers reported McGee as saying, "I'm going to jail, I did it." Donna McGee told the police that she had cut her head when she tripped getting out of bed; she declined to say anything more. McGee acknowledged that he might have pushed his mother while trying to reach Alexander, but denied knowing how she had cut her head.

Alexander gave a different account of the incident. According to Alexander, he got out of bed after hearing McGee pound on the trailer door. Alexander dressed himself as McGee's mother went to open the door. He then saw McGee punch his mother in the face and begin moving toward Alexander, threatening to kill him. The two men wres-

tled, and Alexander gained the upper hand. He released McGee after McGee calmed down; McGee then left the trailer as Alexander called the police. While on the phone, Alexander heard breaking glass outside but he remained in the trailer until officers arrived.

The police arrested McGee and charged him with two misdemeanor counts of assault (one for Alexander and one for McGee's mother) and one felony count of criminal mischief for intentionally damaging Alexander's truck in excess of $500.

## B. Proceedings

Before trial, McGee gave notice that he wanted to assert self defense as to the criminal mischief charge. The superior court allowed McGee to present evidence supporting his theory but declined to rule whether it would instruct on self defense as to the criminal mischief charge, taking that issue under advisement. Ultimately, the court declined to give a self-defense instruction as to the charge, concluding that, as defined under Alaska law, self defense applies only to the use of force against persons. But given the evidence presented at trial, the court determined that McGee could rely on the defense of necessity instead. Accordingly, the court offered to give the jury "a standard necessity defense instruction."

The prosecution voiced no objection to the instruction, conceding that McGee's claim amounted to a "sort of common sense necessity and . . . if the court doesn't instruct them somebody in there is going to . . . be back there arguing necessity without instructions." Given the court's refusal to instruct on self defense, McGee reluctantly accepted the court's offer to give the necessity instruction but expressly noted his objection that the instruction would "essentially, shift part of the burden . . . more to the defense."

The court instructed the jury on the defense of necessity. The instruction informed the jury that McGee bore the burden of proving his claim of necessity by a preponderance of the evidence. The jury returned a verdict acquitting McGee of assaulting Alexander but convicting him of criminal mischief for damaging Alexander's truck. The jury deadlocked on the assault involving Donna McGee, and the state later dismissed the charge.

McGee appealed to the court of appeals, challenging the superior court's refusal to instruct the jury on self defense. In arguing the point, McGee relied on the language of Alaska's criminal mischief statute, which specifically requires the offense to be committed by a person who intentionally damages property "having no right to do so or any reasonable ground to believe the person has such a right." [1] McGee argued that this element of the offense required the state to disprove his claim of self defense because, "[a] person has a 'right' to defend himself in certain circumstances. If, in the course of protecting oneself property is damaged, a person should be able to raise self defense." McGee further contended that the standard necessity instruction given to his jury failed to cure the problem because "[t]he burden of establishing necessity rests on the defendant. . . . In contrast, the State must disprove self defense."

The court of appeals affirmed the superior court's ruling.[2] While expressing doubt that Alaska's statutory definition of self defense would extend to the use of force against property rather than persons, the court of appeals did not decide the point.[3] The court ruled instead that there was no need to instruct on self defense because McGee failed to establish a basis for believing that he faced imminent harm from Alexander—a prerequisite for raising a self-defense claim.[4] Relying on this factual ground, the court of appeals upheld McGee's conviction without considering whether the necessity instruction permissibly shifted the burden of proof to McGee.[5]

1. AS 11.46.482(a).

2. *McGee v. State,* 95 P.3d 945, 947 (Alaska App. 2004).

3. *Id.*

4. *Id.*

5. *Id.*

McGee filed a petition for hearing with this court, seeking review of the court of appeals' decision. We granted the petition, specifically asking the parties to discuss, in addition to other issues they might brief, whether the elements of Alaska's criminal mischief statute "affirmatively require the state to prove the absence of self defense and/or necessity, assuming that McGee presented 'some evidence' raising these defenses." [6] Because the answer to this question proves dispositive as it relates to McGee's necessity defense, we confine our opinion to that point without addressing the issue of self defense.

## III. DISCUSSION

### A. Parties' Arguments

McGee argues that the superior court erred in instructing the jury that he bore the burden of proving necessity by a preponderance of the evidence. McGee does not dispute that the standard necessity instruction given in his case tracks the Alaska criminal code's general provisions governing necessity. Instead, he rests his claim of error on the Alaska criminal code's specific definition of criminal mischief.

The criminal mischief provision under which McGee was convicted, AS 11.46.482(a)(1), makes it unlawful to intentionally damage the property of another when a person has "no right" to cause the damage "or any reasonable ground to believe" that such a right exists.[7] This "no right or reasonable ground" requirement is common to all levels of Alaska's criminal mischief statutes.[8] McGee insists that the criminal mischief statute makes this requirement a necessary element of the crime and asserts that the state therefore had a consti-

tutional duty to prove beyond a reasonable doubt that he lacked any reasonable ground to believe that he needed to damage the truck to protect himself from Alexander.

In response, the state asserts that the code's general justification provisions unequivocally required McGee to prove his claim of necessity by a preponderance of the evidence. The state argues that because necessity excuses conduct that would otherwise amount to a crime, it is not a true "defense" like self defense. Thus, in the state's view, the standard necessity instruction permissibly shifted the burden of proof to McGee.

The state further asserts that the "right" mentioned in the criminal mischief statute's "no right or reasonable ground" requirement bears no relationship to the defense of necessity. According to the state, this requirement merely refers to property rights. The state finds this limited meaning of "right" to be implicit in the criminal mischief statute's provision specifying that the crime occurs only when a person damages "property of another." [9] Insisting that "McGee had no legally cognizable interest in Alexander's truck," the state reasons that his necessity defense did not implicate any elemental "right" addressed by the statute.

### B. Analysis

The parties' arguments require us to address two related issues: first, we must consider the Alaska criminal code's general provision dealing with the defense of necessity to determine whether that provision always requires trial courts to treat necessity as an affirmative defense; then we must consider the criminal mischief statute's "no right or reasonable ground" requirement to determine whether its use of the word "right" is

---

**6.** *McGee v. State,* No. S–11611, Petition for Hearing Order at 1 (December 27, 2004).

**7.** AS 11.46.482(a) states in relevant part:
  A person commits the crime of criminal mischief ... if, having no right to do so or any reasonable ground to believe the person has such a right, ... with intent to damage property of another, the person damages property of another in an amount of $500 or more.
  At the time of the incident at issue here, section .482 designated the level of this offense as second-degree criminal mischief. The following year—in 2002—the legislature redesignat-

ed section .482 as covering third-degree criminal mischief but did not alter the provision's substantive elements or the applicable penalties. Ch. 92, §§ 9–11, SLA 2002. Since the amendment has no bearing on McGee's case, this opinion cites subsection .482(a) as though it remained unamended.

**8.** *See* AS 11.46.475–.486. *Cf. Seibold v. State,* 959 P.2d 780, 784 n. 2 (Alaska App.1998).

**9.** AS 11.46.482(a).

broad enough to allow a person to claim a "right" to damage property of another on the ground that the damage was justified under the defense of necessity.

### 1. Scope of the criminal code's necessity provision

■ The superior court gave McGee's jury Alaska's standard instruction on necessity. In keeping with the criminal code's general provisions on justification,[10] this instruction informed the jury that McGee bore the burden of proving his claim of necessity by a preponderance of the evidence.[11]

The trial court's decision to give this instruction despite McGee's objection that it shifted the burden of proof to him suggests that the court viewed the code's justification provisions as controlling the issue. The state adopts the same view in its arguments here. While acknowledging that the prosecution would have borne the burden of proof if the circumstances had supported a claim of self defense,[12] the state asserts that necessity "is entirely different from self defense" because "[t]he Alaska legislature has defined necessity as an affirmative defense." Because the law traditionally views necessity as a legal excuse rather than as a defense negating a necessary element of an offense, the state insists that applying the code's general definition of necessity poses no constitutional problem since "[t]he prosecution was still held to its burden of proving beyond a rea-

sonable doubt [ ] all [of] the elements of the criminal mischief charge."

The state's position overlooks the specific language of the code's necessity provision, AS 11.81.320. While section .320 adopts necessity as a form of justification and classifies it as an affirmative defense, its provisions do not purport to be exclusive. By its own terms, AS 11.81.320(a) establishes a general definition of the defense meant to apply by default when more specific statutes do not provide otherwise—either by "plainly" excluding the defense or by treating it differently "in the specific situation involved":

> (a) Conduct which would otherwise be an offense is justified by reason of necessity to the extent permitted by common law when
>
> (1) neither this title nor any other statute defining the offense provides exemptions or defenses dealing with the justification of necessity in the specific situation involved; and
>
> (2) a legislative intent to exclude the justification of necessity does not otherwise plainly appear.[13]

Section .320's approach comports with the basic principle of statutory construction favoring a specific provision of a statute over a general one when the two conflict.[14] It also aligns with constitutional rulings that require the state to bear the burden of proof beyond a reasonable doubt when a criminal law specifically defines "the absence of a defense" as an "ingredient of the offense." [15]

---

10. *See* AS 11.81.320 (adopting necessity as a justification to the extent permitted at common law and classifying it as an affirmative defense); *see also* AS 11.81.900(b)(2)(B) (defining "affirmative defense" as requiring defendants to prove the defense by a preponderance of the evidence).

11. Jury Instruction No. 9 stated in relevant part:
   The defendant has raised the affirmative defense of necessity with respect to Count 1, the charge of criminal mischief in the second degree. The defendant normally has no burden of proof in a criminal case. The state has the burden of proving beyond a reasonable doubt all necessary elements of an offense as well as the absence of defenses that have been raised. However, the defendant has the burden of establishing the affirmative defense of necessity by a preponderance of the evidence.

12. The criminal code classifies self defense as a "defense," AS 11.81.300–.330, and requires the

state to bear the burden of disproving a "defense" once it is placed in issue. AS 11.81.900(b)(19).

13. AS 11.81.320(a).

14. 2A NORMAN J. SINGER, STATUTES AND STATUTORY CONSTRUCTION § 46:05, at 177 (6th ed. 2000) ("Where there is inescapable conflict between general and specific terms or provisions of a statute, the specific will prevail."); *see also Allen v. Alaska Oil & Gas Conservation Comm'n*, 147 P.3d 664, 668 (Alaska 2006) ("In general, if two statutes conflict ... the specific controls over the general.").

15. *State v. McCullum*, 98 Wash.2d 484, 656 P.2d 1064, 1068 (1983), *abrogated on other grounds by State v. Camara*, 113 Wash.2d 631, 781 P.2d 483, 487 (1989) (citing *Patterson v. New York*, 432 U.S. 197, 206–07, 97 S.Ct. 2319, 53 L.Ed.2d 281

As already noted, the specific criminal statute at issue here, AS 11.46.482(a)(1), defines the offense of criminal mischief to allow conviction only when property damage is intentionally caused by a person "having no right to do so or any reasonable ground to believe the person has such a right." [16] By describing as an integral part of the offense the defendant's lack of a reasonable ground to believe that a right to damage another's property existed, the statute's plain language makes the absence of any "right" or "reasonable ground" a necessary ingredient of criminal mischief, thus requiring the state to bear the burden of proof on the issue once it is raised. To the extent that this allocation of the burden conflicts with the code's general provision adopting necessity as an affirmative defense for the defendant to prove, the criminal mischief statute's specific requirement would prevail by the general provision's own terms, since the criminal mischief law would be a "statute defining the offense" in a manner that "provides exemptions or defenses dealing with the justification." [17]

### 2. Meaning of "right" as used in the criminal mischief statute

It follows that the proper allocation of proof on necessity in this case turns on the meaning of the criminal mischief statute's "right or reasonable ground to believe" provision. If that provision uses the word "right" broadly enough to include claims of right based on legal justification, then the criminal mischief statute would have required the state to disprove McGee's claim of necessity: if McGee had a reasonable ground to believe that his actions were necessary, this belief would have been a justification for

causing the damage. On the other hand, if the criminal mischief statute's "no right or reasonable ground" element gives "right" a narrower meaning—one that excludes justifications—then it would not require the state to disprove necessity, and the criminal code's general necessity provision would apply by default, making necessity an affirmative defense.

The state takes the position that the element must be given a narrow reading, contending that, as used in the criminal mischief statute, "right" refers exclusively to property rights. This position mirrors the view the state advanced in *Seibold v. State*, a case in which the court of appeals found the trial court's refusal to give a necessity instruction in a criminal mischief case was reversible error.[18] There the court of appeals described the state's brief as asserting "that the language in question merely exempted from prosecution a person who destroyed his own property or who acted in good faith on the belief he had authority to destroy the property." [19] This view failed to persuade the court of appeals in *Seibold*,[20] and it fares no better here. The narrow meaning proposed by the state finds no support in the text of Alaska's criminal mischief provision, in the traditional view of comparable property crimes, in our criminal mischief statute's legislative history, or in cases interpreting New York's criminal mischief law, the source of our statute's wording.

### a. Textual meaning of "right"

As commonly understood and defined, the word "right" means any "interest or expectation guaranteed by law," not just an interest or expectation relating to property.[21] Since

---

(1977)); *cf. Blackhurst v. State,* 721 P.2d 645, 648 (Alaska App.1986) (requiring state to bear burden of proving lack of justification when statute requires defendant to act "without justification"); *Taylor v. State,* 710 P.2d 1019, 1021 (Alaska App.1985) (language specifying that conduct must be "without lawful excuse" requires state to disprove excuse).

**16.** AS 11.46.482(a).

**17.** AS 11.81.320(a)(1).

**18.** *Seibold v. State,* 959 P.2d 780, 783 (Alaska App.1998).

**19.** *Id.* at 784.

**20.** The court of appeals found both parties' briefing on this point "not helpful" and declined to decide the issue. *Id.*

**21.** Black's Law Dictionary at 551 (Bryan A. Garner ed., pocket ed. 1996) (A right is "[a]n interest or expectation guaranteed by law; for every right that a person has, somebody else has a corresponding duty.").

this ordinary meaning of the word is broad enough to include expectations guaranteed by laws adopting legal defenses and justifications, the meaning the state proposes here—that "right" is limited to property rights—is exceedingly narrow.

The criminal mischief statute itself suggests no such limitation. To the contrary, by specifying that a person who intentionally damages property of another commits the offense of criminal mischief only when the person has "*no* right to do so or *any* reasonable ground to believe" that such a right exists, the language of the statute seemingly contemplates a broad, comprehensive meaning of the word "right." [22]

The state suggests that its proposed limitation arises by implication from the criminal mischief statute's requirement that criminal mischief must involve damage to "property of another." But we can glean no implied limitation of "right" from this seemingly independent requirement. As defined in the code, " 'property of another' means property in which [another] person has an interest which the defendant is not privileged to infringe, whether or not the defendant also has an interest[.]" [23] As a preliminary matter, we note that the code's definition of "property of another" does not even use the word "right." Instead, it speaks in terms of "interests" and "privileges." This definition implies no limitation on the criminal mischief statute's use of the word "right." In fact, to the extent that it implies anything concerning the meaning of "right," it suggests that the word is flexible enough to include any "privilege" or "interest" allowing a defendant to "infringe" on an owner's property rights—a meaning broad enough to include common law privileges, which current criminal law classifies as justifications.[24]

Nor does the criminal mischief statute draw any other connection between its "no right or reasonable ground to believe" requirement and its "property of another" requirement. The statute's plain language imposes these two requirements separately: they stand independently and serve different purposes; neither requirement appears to qualify or define the other.

By conflating the two requirements, the state in effect proposes to make the "no right or reasonable ground to believe" requirement superfluous. As we just noted, the code defines "property of another" to mean "property in which [another] person has an interest which the defendant is not privileged to infringe, whether or not the defendant also has an interest." [25] By definition, then, a person who causes property damage but has a legitimate "interest" or "privilege" to do so would not be damaging "property of another." By the same token, because the criminal mischief statute specifies that the defendant must act "*with intent to* damage property of another," [26] the "property of another" requirement on its own would prevent convicting a defendant who acted with a reasonable but mistaken belief that a property interest or privilege existed.

Thus, if the word "right" refers only to a property right, as the state insists it does, the criminal mischief statute's "no right or reasonable ground to believe" requirement becomes mere surplusage: it adds nothing to the "property of another" requirement that is not already there. Adopting this interpretation would violate the maxim of statutory construction that forbids interpreting statutory language in a way that makes it superfluous: "It is an elementary rule of construction that effect must be given, if possible, to every word, clause and sentence of a statute." [27]

---

22. AS 11.46.482(a) (emphasis added).

23. AS 11.46.990(13).

24. See, for example, MODEL PENAL CODE § 3.10 & cmt. (1985). Section 3.10 broadly defines justification in property crimes to cover any conduct damaging property "under circumstances that would establish a defense of privilege in a civil action based thereon"; the accompanying commentary describes the breadth of this justification as "both proper and necessary."

25. AS 11.46.990(13).

26. AS 11.46.482(a)(1).

27. 2A NORMAN J. SINGER, STATUTES AND STATUTORY CONSTRUCTION § 46:06, at 181 (6th ed.2000); *see also Mechanical Contractors of Alaska, Inc. v. State, Dep't of Pub. Safety*, 91 P.3d 240 (Alaska 2004) ("When we engage in statutory construction we will presume 'that the legislature intended every word, sentence, or provision of a statute

### b. Traditional view of similar property crimes

The state's narrow interpretation of "right" also conflicts with the traditional view of criminal laws dealing with property damage. While the basis for requiring the state to shoulder the burden of disproving necessity in a criminal mischief case might seem obscure at first blush, the approach makes more sense when we consider our current provision's predecessor. Before Alaska adopted its revised criminal code, the counterpart of our current criminal mischief offense was called "malicious mischief and destruction of property." [28] Former AS 11.20.515 defined this crime as occurring when a person "wilfully or maliciously destroys, defaces, injures or exposes to injury real or personal property not his own." [29]

These statutory elements squarely placed the burden on the state to prove not only that the defendant intentionally damaged "property not his own" [30] but also that the defendant did so "wilfully or maliciously"— subjective culpable mental states that our case law commonly understood as requiring the state to prove either a conscious "awareness of wrongdoing" [31] or the intentional commission of "an unlawful act without justification or other legal excuse." [32]

In requiring wilful or malicious conduct, then, the malicious mischief statute effectively gave the state the burden of proving that the defendant lacked any ground to believe that a justification for committing the damage existed: by definition, no "wilful or malicious" destruction could be found if the defendant honestly believed that property damage was justified.

Professor Perkins confirms that this view of malicious mischief was not peculiar to Alaska law; it reflected the prevailing view of the crime:

> [T]he element of malice, as the special mental element of malicious mischief, requires either a specific intent to cause the destruction of, or substantial damage to, the property of another, or an act done in wanton and wilful disregard of the plain and strong likelihood of such harm, without any circumstances of justification, excuse or substantial mitigation. *Stated in other words:*
>
> *The mens-rea requirement of malicious mischief is a property-endangering state of mind, without justification, excuse or mitigation.* [33]

As it existed before Alaska enacted its revised criminal code, then, the malicious mischief statute routinely required the state to prove that the defendant intentionally damaged another person's property "without justification, excuse, or mitigation." [34] Moreover, because the former statute's requirement of malicious or wilful destruction turned on the defendant's subjective state of mind, it exempted any person who acted on the basis of a genuine but mistaken belief that a justification existed, no matter whether the belief was reasonable or patently unreasonable.

When viewed against this historical backdrop, the changes incorporated in the revised code's criminal mischief provision appear to reflect a desire to narrow the malicious destruction law's broad exemption for all conduct based on mistaken beliefs by replacing the requirement of malice or wilfulness with an objective test that would exempt mistaken

---

to have some purpose, force, and effect, and that no words or provisions are superfluous.' ").

**28.** Former AS 11.20.515.

**29.** Alaska Criminal Code Revision Part IV, at 19 (Tent. Draft 1977).

**30.** This requirement was the equivalent of the current criminal mischief provision's "property of another" requirement. *See* AS 11.46.482(a).

**31.** *See, e.g., Hentzner v. State,* 613 P.2d 821, 827 (Alaska 1980) (construing "wilful" to require

"awareness of wrongdoing as an essential element of the offense").

**32.** *See, e.g., Tarnef v. State,* 512 P.2d 923, 929 & n. 9 (Alaska 1973) (approving jury instruction defining "malice" stating that "[m]alice exists when a defendant intentionally does an unlawful act without justification or other legal excuse").

**33.** ROLLIN M. PERKINS & RONALD N. BOYCE, CRIMINAL LAW, ch. 4, § 7, at 413 (3d ed.1982) (emphasis in original).

**34.** *Id.*

beliefs as to justification only when the defendant had reasonable grounds for so believing. The code's "no right or reasonable ground" requirement appears tailored to meet this goal: it adopts a predictable and objective substitute for malice and wilfulness that relaxes the burden borne by the state under the criminal mischief law by eliminating the former law's built-in exemption of conduct grounded on a defendant's genuine but unreasonable beliefs.

### c. Legislative history of Alaska's current statute

This view of our current law's "no right or reasonable ground" requirement also comports with the legislative history of Alaska's current statute. In a sectional analysis accompanying the tentative draft of the revised criminal code, the code's authors described the tentative draft's property-damage provisions as generally striving to eliminate "[t]he needless proliferation of overlapping statutes which carry inconsistent penalty provisions covering damage to or tampering with property."[35] Other commentary specifically addressing early versions of the criminal mischief statute's "no right or reasonable ground" language supports the view that this requirement worked toward the tentative draft's general goal by replacing malice and wilfulness with a uniform test designed to avoid rewarding unreasonable mistakes.

The earliest tentative version of the Alaska revised code's current provision, drafted in 1976, included a shortened form of the "no right or reasonable ground" requirement that omitted the current phrase "any reasonable ground to believe"; this shortened form

required the state to prove only that a defendant intentionally damaged the property of another "having no right to do so."[36] The commentary accompanying this shorter version explained that its drafters believed that it would narrow the existing exemption for mistaken conduct by making the new criminal mischief law "cover" any mistaken belief that was unreasonable, even if it was honestly held: "Under this draft, one who honestly but unreasonably believes he has a right to deal with property in the way he does is covered."[37]

A year later, the 1977 version of the tentative draft modified the 1976 preliminary version by adding the phrase "or any reasonable ground to believe he has such a right."[38] This change made explicit the intent described in the 1976 commentary by specifying that mistaken beliefs would only be excused if they were "reasonable."[39] The commentary to the 1977 version specifically noted that its new wording extended to all levels of criminal mischief: "Common to each degree of criminal mischief is the requirement that the defendant have no right nor any reasonable ground to believe he has a right to interfere with the property."[40]

By emphasizing that all of the code's criminal mischief provisions incorporated this new language, the 1977 commentary makes it clear that its drafters intended to narrow the malicious mischief statute's subjective exemption for mistaken beliefs by uniformly defining the elements of criminal mischief so that no form of the offense would require the state to prove the absence of unreasonable mistakes.[41] But nothing in the commentary

---

35. Alaska Criminal Code Revision Part IV, at 20 (Tent. Draft 1977).

36. Alaska Criminal Code Revision Preliminary Report, at 90–91 (1976), available at *Seibold*, 959 P.2d at 784 n. 2.

37. Preliminary Report, at 92, available at *Seibold*, 959 P.2d at 784 n. 2.

38. Alaska Criminal Code Revision Part IV, at 16–17, available at *Seibold*, 959 P.2d at 784 n. 2.

39. Alaska Criminal Code Revision Part IV, at 16–17, available at *Seibold*, 959 P.2d at 784 n. 2.

40. Alaska Criminal Code Revision Part IV, at 21, available at *Seibold*, 959 P.2d at 784 n. 2.

41. Arguably, the commentary's explanation that this language applied to all classes of criminal mischief might also provide insight to the basis for the revised code's otherwise curious omission of any justification provision allowing self-defensive conduct toward property: when broadly applied, the "no right or reasonable ground" requirement would act as an offense-specific surrogate for a general property crimes justification provision allowing a person to act in self defense by disabling an assailant's property rather than the assailant. *Compare, e.g.*, Model Penal Code § 3.10 (1985) (broadly allowing justification to be claimed in a prosecution for any property crime involving damage to property when the conduct damaging the property occurred "under circumstances that would estab-

suggests any intent to narrow the then-existing law even further by adopting a restricted meaning of the word "right" that would completely eliminate the state's traditional duty to rule out justification. To the contrary, by describing the new phrase as a "requirement" that the defendant act with "no right" or "any reasonable ground" for believing in the existence of "a right to interfere," the commentary strongly signaled that its drafters intended "right" to include more than just a privilege or interest deriving from the property's owner.

### d. Cases construing New York's criminal mischief law

The 1977 tentative draft's version of the criminal mischief provision marked the first appearance in Alaska's revised code of language approximating the code's current "no right or any reasonable ground" requirement. The requirement's phrasing was evidently drawn from almost identical language appearing in New York law.[42] New York Penal Law § 145 states in relevant part that "[a] person is guilty of criminal mischief ... when, having no right to do so nor any reasonable ground to believe that he has such right," the person intentionally damages the property of another.[43]

New York courts have consistently treated § 145's "no right or reasonable ground" requirement as an essential element of criminal mischief and have not confined the requirement to mistakes involving property rights. In *People v. Kheyfets*, for example, the court recognized that "New York's criminal mischief statute differs from those applied in other states in that it has one additional element: that the person has no right nor any reasonable ground to believe that he has the right to damage another's property."[44] The court further held that this element gives the state "the burden of proving that a defendant's belief was not reasonable."[45] Similarly, in *People v. Reed,* a New York court observed that "the relevant statutory provision governing criminal mischief requires a showing that, *inter alia,* the defendant had no right to damage the property and that he had no reasonable ground to believe that he had such right."[46] New York's case law thus provides no support for the state's narrow interpretation.

### 3. Proper scope of the state's burden of proof

Because the text, context, and history of the criminal mischief statute provide no support for the narrow meaning of "right" proposed by the state, we conclude that the criminal mischief statute's phrase "having no right to do so or any reasonable ground to believe the person has such a right" encompasses any reasonable ground to believe that a legal justification for causing the alleged property damage existed. And since AS 11.46.482(a) unambiguously defines the essential elements of criminal mischief to include the absence of "any reasonable ground to believe the person has such a right," we further conclude that the state bears the burden of proof on this element once an issue of justification is raised. Thus, if McGee properly placed the defense of necessity in issue, the state bore the burden of proving beyond a reasonable doubt that he had no

---

lish a defense of privilege in a civil action based thereon").

**42.** *Seibold v. State,* 959 P.2d 780, 784 n. 2 (Alaska App.1998); *see also Neitzel v. State,* 655 P.2d 325, 327 (Alaska App.1982) ("The Tentative Draft [of the Alaska Revised Criminal Code] prepared by the Subcommission on Criminal Law was based on a number of recent state codifications of criminal law. These codes in turn were substantially derived from the New York Revised Penal Code of 1965.").

**43.** *E.g.,* N.Y. PENAL CODE § 145 (1998).

**44.** *People v. Kheyfets,* 174 Misc.2d 516, 665 N.Y.S.2d 802, 805 (N.Y.Sup.Ct.1997).

**45.** *Id.*

**46.** *People v. Reed,* 121 A.D.2d 574, 503 N.Y.S.2d 624, 625–26 (1986). *See also People v. Cantalino,* 166 Misc.2d 624, 632 N.Y.S.2d 445, 448 (Crim. Ct.1995) (dismissing criminal mischief charge that accused the defendant of damaging a door while attempting to serve a court order, ruling that the language of the order "gave the defendant a reasonable ground to believe that she had the right to do what was reasonably necessary" to serve the order, which resulted in the alleged property damage).

reasonable ground to believe that his actions were necessary for self-protection.

## C. Remaining Issues

■ Our interpretation of the criminal mischief statute leaves two questions to consider: whether McGee properly raised the defense of necessity and whether misallocating the burden of proving necessity to McGee amounted to harmless error.

### 1. The "some evidence" test

■ A defendant who seeks to raise a defense ordinarily must present "some evidence" to place the defense in issue.[47] "Some evidence" is evidence that, viewed in the light most favorable to the defendant, would allow a reasonable juror to find in the defendant's favor on each element of the defense.[48]

Although the criminal code specifically recognizes the defense of necessity, the code's provisions do not define the defense's substantive elements, simply adopting the defense "to the extent permitted by common law."[49] Our cases have recognized that an otherwise unlawful act may be justified by necessity when three elements are met: (1) the act was committed to prevent a significant evil; (2) no adequate alternative existed; and (3) the harm caused was not disproportionate to the harm avoided.[50] The first two elements are determined by considering what the defendant reasonably believed at the time the necessity arose—an inquiry that usually presents issues of fact for the jury.[51] The third element requires an objective comparison of the relative seriousness of the harms caused and avoided when viewed in light of the facts perceived by the defendant.[52]

In this case, when the superior court proposed to rule that McGee had presented enough evidence to raise the defense, the prosecutor agreed, stating his impression that if the court failed to instruct the jury on the defense, jurors would inevitably reach the issue on their own as "sort of common sense."[53] The record supports the view that McGee fairly raised the defense. As we pointed out earlier, McGee testified at trial that as he fled from the trailer after escaping from Alexander's attack, Alexander threatened to run him over. McGee contended that he took this threat seriously. On cross-examination he insisted that Alexander's irrational behavior and unprovoked violence had frightened him and caused him to believe that he needed to break the truck's windows to prevent Alexander from carrying out his threat. He also suggested that, because of the fear and surprise he felt at the time, he saw no alternative course of action.

When viewed in the light most favorable to McGee, his testimony qualifies as "some evidence" placing the first two elements of ne-

---

**47.** *See, e.g., Seibold,* 959 P.2d at 782 ("A defendant is entitled to a jury instruction on the necessity defense if he presents 'some evidence' in support of each of the three elements of the defense."). Compare AS 11.81.900(b)(2)(A) (defining "affirmative defense") and (b)(19)(A) (defining "defense), which both include a threshold requirement that "some evidence must be admitted which places in issue the defense."

**48.** *Seibold,* 959 P.2d at 782–83.

**49.** AS 11.81.320(a).

**50.** *See, e.g., Cleveland v. Municipality of Anchorage,* 631 P.2d 1073, 1078 (Alaska 1981). In cases involving "continuing offenses" such as driving offenses or escape, the court of appeals has recognized that the defendant must also present some evidence tending to show that the violation stopped as soon as the necessity ended. *See Allen v. State,* 123 P.3d 1106, 1108 (Alaska App. 2005) (citing *Reeve v. State,* 764 P.2d 324, 326

(Alaska App.1988); *Gerlach v. State,* 699 P.2d 358, 362 (Alaska App.1985); *Wells v. State,* 687 P.2d 346, 350–51 (Alaska App.1984)).

**51.** *See id.* (Jury must determine that the defendant "reasonably believed at the time of acting that the first and second elements were present, even if that belief was mistaken.").

**52.** *Id.* (holding that, as to the third element, "[a]n objective determination must be made as to whether the defendant's value judgment was correct, given the facts as he reasonably perceived them"); *accord Seibold,* 959 P.2d at 782; *Bird v. Municipality of Anchorage,* 787 P.2d 119, 121 (Alaska App.1990).

**53.** The state's briefing before this court is silent on the point, and its briefing before the court of appeals similarly omitted any argument that McGee failed to present sufficient evidence to raise the defense of necessity.

cessity in issue: the harm McGee feared was freshly threatened and serious; and considering the shock and surprise McGee described, his testimony raised a question of fact whether, at the time of the damage, he reasonably failed to recognize other available options.

McGee's testimony also addressed the third element of the defense, the proportionality requirement. As noted above, even though we exercise independent legal judgment in ruling on proportionality, we must view the facts from the defendant's point of view under the circumstances existing when the disputed action occurred. Here, McGee claimed that he caused the property damage to avoid a potentially serious physical injury just threatened by Alexander. Viewing the situation from McGee's perspective and considering his testimony suggesting that the panic of the moment blinded him to various alternative courses of action, we see no basis for declaring as a matter of law that the

physical damage he caused to the truck was disproportionate to the serious physical injury he feared at the time.[54]

In short, we conclude that rational jurors could have differed as to whether the totality of the evidence raised a reasonable doubt based on McGee's claim of necessity.

### 2. Harmless error

■ The state does not claim harmless error; nor would the record support such a claim. By misallocating the burden of proving necessity to McGee, Jury Instruction Number 9 confronted McGee's attorney with an awkward dilemma in arguing McGee's case to the jury. On the one hand, the jury instruction describing the statutory elements of criminal mischief seemingly gave the state the burden of negating McGee's claim that he had acted out of a reasonable belief that he had a right to damage the truck.[55] On the other hand, Instruction Number 9 specifically

---

**54.** The dissent finds that "McGee's story is implausible." Dissent at 1264. Yet our case law applying the some evidence test has emphasized that "[a]ny weakness or implausibility in the evidence supporting [the defendant's] story is not a relevant consideration." *Toomey v. State,* 581 P.2d 1124, 1126 n. 10 (Alaska 1978). More specifically, in the analogous context of self-defense, Alaska case law has also emphasized that, "[p]articularly because reasonableness is a factual question closely allied with considerations involving the credibility of witnesses and the weight to be given to their testimony, trial courts must avoid basing decisions as to the necessity of self-defense instructions on an evaluation of the reasonableness of defendants' conduct.... 'It is not the province of the judge to weigh the evidence and decide if defendant's subjective belief was reasonable or unreasonable.'" *Paul v. State,* 655 P.2d 772, 778 (Alaska App.1982) (internal citations omitted) (quoting *State v. Lockett,* 82 Ill.2d 546, 45 Ill.Dec. 900, 413 N.E.2d 378, 382 (1980)).

The dissent also likens McGee's conduct to a continuing offense and suggests that he should have been required to justify his conduct as to each damaged window by presenting "some evidence" that the particular damage was necessary. Dissent at 1265–66 n. 12. But McGee was not convicted of a continuing offense; he was convicted for engaging in a brief course of conduct involving several discrete but closely connected acts of destruction. This court has declined to parse conduct of this kind as though it involved multiple crimes, holding instead that "[w]e view [such] events as a series of acts, in a short and continuous sequence, which amount to

a unitary criminal episode." *Mill v. State,* 585 P.2d 546, 552 (Alaska 1978); *cf.* AS 11.46.980(c) (requiring aggregation of property damage for purposes of determining classification of a property crime that involves multiple "criminal acts committed under one course of conduct"). Because Alaska law views McGee's "short and continuous sequence" of destructive acts as "a unitary criminal episode," McGee's claim of necessity—which included his testimony indicating that he acted in a panicked state of mind triggered by Alexander's sudden, unprovoked attack and express threat of imminent death—suffices to meet the some evidence test. To be sure, McGee's multiple acts of destruction might have weakened his claim and made it less plausible in the eyes of the jury. But as we have already noted, "weakness or implausibility ... is not a relevant consideration." *Toomey,* 581 P.2d at 1126 n. 10.

**55.** Jury Instruction Number 8 stated, in relevant part:

> To prove that the defendant committed the crime of criminal mischief in the second degree, the state must prove each of the following elements beyond a reasonable doubt:
> 1. the defendant had no right or any reasonable ground to believe in a right to commit the acts charged;
> 2. the defendant intended to damage property of another;
> 3. the defendant damaged property of another; and
> 4. the property was damaged in an amount of $500 or more.

told the jury that, while "[t]he state has the burden of proving beyond a reasonable doubt all necessary elements of an offense as well as the absence of defenses that have been raised ... the defendant has the burden of establishing the affirmative defense of necessity by a preponderance of the evidence."

In arguing its case to the jury, the prosecution pointed out that the criminal mischief statute's "no right or reasonable ground to believe" requirement dealt with the defense of necessity. After reminding jurors that McGee had the burden of proving this defense by a preponderance of the evidence, the prosecution emphatically argued that McGee had failed to meet his burden: "[T]he no right or no reasonable ground to believe you have such a right is talking about necessity. I[t] i[s] because necessity is that reasonable ground to believe that you have [ ] such a right. It's not present in this case. It has not been proved by a preponderance [of the evidence.]"

Forced to respond as best she could, McGee's counsel initially tried to describe the "no right or reasonable ground" requirement as an element of the crime that the state had to prove: "The first element is that the defendant—that the state has to prove that the defendant had no right or any reasonable grounds to believe in a right that—to commit the act charged." But later, in attempting to reconcile this view with the necessity instruction, McGee's counsel had to acknowledge that the necessity instruction ultimately shifted the burden from the state to McGee:

> [S]o to recap, the state has the burden of proving that the defendant has no right or any reasonable ground to believe in a right to commit this act of criminal mischief. But we do have the burden of showing that by a preponderance of the evidence, which is [less than] proving beyond a reasonable doubt, but proving that it's more likely than not that necessity applies in this case. In other words, that the act charged, the criminal mischief, was done to present— prevent a significant evil.

Despite McGee's trial counsel's best efforts to overcome the disadvantage of the misallo-

cated burden, then, the only argument she could muster was essentially that the state would have the burden of proof on the "no right or reasonable ground" requirement, but only if McGee first met his burden of proving necessity.

The jury acquitted McGee of assaulting Alexander but convicted him of criminal mischief. The split verdicts suggest a likelihood that the instruction shifting the burden of proof on necessity played a substantial part in McGee's conviction. Considering these circumstances, we see no basis for holding that the error in giving McGee the burden of proof on necessity was harmless.

## IV. CONCLUSION

Alaska law defines the essential elements of criminal mischief to require proof of intentional damage to property of another caused by a person having "no right to do so or any reasonable ground to believe that the person had such a right." [56] Because we conclude that the "right" to cause damage addressed by this element of the offense includes a claim of right based on a legal justification such as the defense of necessity, we hold that McGee was improperly required to bear the burden of proof on his claim of necessity. We therefore REVERSE the conviction and REMAND for further proceedings consistent with this opinion.

CARPENETI, Justice, not participating.

MATTHEWS, Justice, dissenting.

I agree with today's holding that the state had the burden to prove beyond a reasonable doubt that McGee lacked any reasonable ground to believe his act was justified. I nonetheless dissent because the facts viewed most favorably to him did not support a necessity defense. The superior court's error as to the burden of proving the defense was therefore harmless.

The elements of necessity are: "1) the act charged must have been done to prevent a significant evil; 2) there must have been no adequate alternative; 3) the harm caused must not have been disproportionate to the

---

56. AS 11.46.482(a).

harm avoided."[1] As the court notes, a defendant must present "some evidence" to adequately raise the defense.[2] Some evidence is " 'evidence in light of which a reasonable juror could have entertained a reasonable doubt ...' as to the element in question."[3] "To determine whether this test has been met in a particular case the court must view the evidence in the light most favorable to the defendant."[4] I do not believe that McGee presented evidence that could cause a reasonable juror to entertain a doubt about whether McGee's destruction of the truck windows was justified by necessity.

McGee's story is implausible. At trial he told the jury that Anderson threatened to run him over after they scuffled. So he broke the truck's windows so that Anderson would not be able to see McGee well enough to hit him with the truck. While a reasonable juror could conceivably find, as the court suggests, that "the panic of the moment blinded him to various alternative courses of action,"[5] McGee's explanation is still dubious at best. McGee had a multitude of more reasonable, not to mention more effective, options at hand, the most obvious of which would have been to stay off the road and seek immediate help.[6] Furthermore, the question presented to the jury would not have been whether McGee subjectively believed that there were legal alternatives, but whether this belief was objectively reasonable. It is highly unlikely that, even viewing the evidence in the light most favorable to McGee, any juror would entertain a reasonable doubt regarding the second element of the necessity defense—that there were "no adequate alternatives" to breaking the windows.[7]

Even if McGee satisfied the some evidence standard with respect to the second element of necessity, he definitely did not do so with respect to the first element. A closer look at what he actually did to the truck makes it clear that no reasonable juror could entertain a doubt about whether McGee reasonably believed his actions were "done to prevent a significant evil."[8] The vast majority of the damage done to Anderson's truck would not have impaired Anderson's ability to target and run over a pedestrian, which renders McGee's explanation unbelievable.

If McGee was really trying to make it difficult for Anderson to see out of the truck, one would expect a great deal of damage to

1. *Nelson v. State*, 597 P.2d 977, 979 (Alaska 1979). "The defense is established if the accused reasonably believed at the time of acting that the first and second elements were present, but a reasonable belief will not suffice for the third element; the court makes an objective determination ... as to whether the defendant's value judgment was correct, given the facts as he reasonably perceived them." *Seibold v. State*, 959 P.2d 780, 782 (Alaska App.1998).

2. Op. at 1261.

3. *Folger v. State*, 648 P.2d 111, 113 (Alaska App. 1982) (quoting *LaLonde v. State*, 614 P.2d 808, 810 (Alaska 1980)).

4. *Seibold*, 959 P.2d at 783. The court points to language in *Toomey v. State* that states that when determining whether there is some evidence to support a defense, "[a]ny weakness or implausibility in the evidence supporting [the defendant's] story is not a relevant consideration." Op. at 1262 n. 54 (citing *Toomey v. State*, 581 P.2d 1124, 1126 n. 10 (Alaska 1978)). However, this language must be read in conjunction with the some evidence test. If this court cannot consider a weakness or implausibility in a defendant's story that is so glaring as to render the defendant's story such that no reasonable person could entertain a reasonable doubt about it, then the *Toomey* exception would make the some evidence rule meaningless. In fact, the language in *Toomey* relies on *Brooke v. United States*, 385 F.2d 279, 284 (D.C.Cir.1967), as well as a dissenting opinion by Justice Rabinowitz in *Wilson v. State*, 473 P.2d 633, 638 n. 2 (Alaska 1970), which also relies on *Brooke*. The *Brooke* court does state that no weakness or implausibility should be considered, but it only applied this rule to cases where there is already "evidentiary support for special facts sustaining a *rational* defensive theory." 385 F.2d at 284 (emphasis added).

5. Op. at 1262.

6. McGee testified that he knew that a friend of his was home only a block away.

7. *Nelson*, 597 P.2d at 979. There are several Alaskan cases holding that a defendant did not properly raise the defense of necessity that emphasize the availability of adequate alternatives. *E.g.*, *Gerlach v. State*, 699 P.2d 358, 361 (Alaska App.1985); *Schnabel v. State*, 663 P.2d 960, 966 (Alaska App.1983); *Nelson*, 597 P.2d at 980.

8. *Nelson*, 597 P.2d at 979.

the driver's side of the front windshield. Yet, photographs show that McGee concentrated his front windshield destructive efforts largely on the passenger's side. Although he did smash a portion of the driver's side, he left a large area of untouched glass through which a driver could easily see.

Further, McGee smashed out at least two of the truck's rear window panels and three out of four of the truck's side windows. These acts of destructive mischief might make the truck more drafty but they could not have been meant to reduce visibility and thus thwart a vengeful driver. First, the windows were on the side and the back of the truck, so it would not have significantly hampered the driver's ability to aim the truck at someone in front of him. Second, McGee completely broke out all of the glass, so Anderson would have had no trouble seeing through the windows. There are numerous cases that indicate that a successful necessity defense must establish "a direct causal relationship reasonably anticipated between the criminal action taken and the avoidance of the threatened harm." [9] There is plainly no direct causal relationship between breaking the side and rear windows and stopping the harm McGee claims he was trying to avoid.

The lack of a causal relationship between breaking the side and rear windows and stopping Anderson from running over McGee causes McGee's necessity defense to fail the some evidence test. First, the fact that he had no reason for breaking those windows completely undermines his proffered explanation regarding the front windshield. If his goal really was to reduce visibility, why would he have risked encountering an angry Anderson by expending considerable time and energy in order to completely break out the other five windows? These actions are not in any way consistent with his story and render his story unbelievable.

Second, the destruction of the side and rear windows, viewed in isolation, is sufficient to establish liability. The defense of necessity, like self-defense, is based on the belief that one should not be convicted of a crime when there is no reasonable alternative to committing it. It is "a law of necessity, arising only when the necessity begins, and equally ends with the necessity." [10] In self-defense no more force than appears reasonable to repel a threat may be used.[11] Likewise, no greater destruction of property than appears reasonably necessary to repel a threat can be justified by the defense of necessity. When greater force, or more destruction, than reasonable is used, necessity-based defenses are not available as to the conduct that exceeds the justification.[12] Whether these limits are exceeded will be a

**9.** *United States v. Butler*, 485 F.3d 569, 572 (10th Cir.2007); *also, e.g., United States v. Poe*, 442 F.3d 1101, 1104 (8th Cir.2006); *United States v. Cervantes–Flores*, 421 F.3d 825, 829 (9th Cir. 2005); *United States v. Johnson*, 416 F.3d 464, 468 (6th Cir.2005); *United States v. Dixon*, 413 F.3d 520, 523 (5th Cir.2005); *United States v. Nelson–Rodriguez*, 319 F.3d 12, 40 (1st Cir.2003); *United States v. Salgado–Ocampo*, 159 F.3d 322, 326 (7th Cir.1998); *United States v. Perrin*, 45 F.3d 869, 874 (4th Cir.1995).

**10.** *Harper v. United States*, 608 A.2d 152, 154 (D.C.1992) (quotations omitted).

**11.** *E.g., State v. Walker*, 887 P.2d 971, 978 (Alaska App.1994) (citing P. ROBINSON, CRIMINAL LAW DEFENSES § 131(c), vol. 2, p. 77 (1984)); *United States v. Biggs*, 441 F.3d 1069, 1071 (9th Cir. 2006); *People v. Rodriguez*, 258 Ill.App.3d 579, 197 Ill.Dec. 424, 631 N.E.2d 427, 430 (1994); *Martin v. State*, 784 N.E.2d 997, 1006 (Ind.App. 2003); *Jones v. State*, 357 Md. 408, 745 A.2d 396, 403 (2000); *Com. v. Haddock*, 46 Mass.App.Ct. 246, 704 N.E.2d 537, 540 (1999); *State v. Bland*, 337 N.W.2d 378, 381 (Minn.1983); *State v. Habermann*, 93 S.W.3d 835, 837 (Mo.App.2002);

*State v. Colon*, 298 N.J.Super. 569, 689 A.2d 1359, 1363 (App.Div.1997); *Baier v. State*, 891 P.2d 754, 758 (Wyo.1995); 6 AM JUR.2D *Assault & Battery* § 57 (1999).

**12.** *Cf. Martin*, 784 N.E.2d at 997 (noting that "[w]here a person has used more force than necessary to repel an attack the right to self-defense is extinguished, and the ultimate result is that the victim then becomes the perpetrator") (quotations omitted); *People v. Carrera*, 282 A.D.2d 614, 725 N.Y.S.2d 344, 346 (App.Div. 2001) ("Even if a defendant is initially justified in using deadly physical force in self-defense, if he or she continues to use deadly physical force after the assailant no longer poses a threat, a jury may find that the defendant is no longer acting in self-defense. Where homicide is charged, the People must prove that it was the excessive force which caused death."); 2 CHARLES E. TORCIA, WHARTON'S CRIMINAL LAW § 190, at 453 (15th ed. 1993) ("If a defendant uses more force than is reasonably necessary to defend himself, he is guilty of battery."); 6A C.J.S. *Assault* § 28 ("[W]hen a person responds to an attack by using more force than is necessary to repel the aggres-

jury question, except when no reasonable juror could conclude otherwise. Here that is precisely our situation. As is discussed above, while a juror might accept McGee's contention that he bashed in the truck's windshield so that Anderson could not see well enough to pursue him, no similar justification is available as to the destruction of the truck's side and rear windows. Since the malicious destruction crime is complete in terms of the required value of property destroyed when only the side and rear windows are considered,[13] there was no need for an instruction on the necessity defense. Thus, the error the instruction contained was harmless.

For these reasons, I do not believe that McGee presented sufficient evidence to raise the defense of necessity. Since no instruction on the defense was needed, the error in the instruction that was given is harmless. I would therefore affirm McGee's conviction of criminal mischief.

sion or apparent aggression, he or she is liable for injuries caused by the unnecessary force."). Similarly, under our necessity jurisprudence, "a person claiming necessity in justification of a 'continuing offense' must offer some evidence that the continued violation of the law—as well as the initial violation—was justified." *Reeve v. State*, 764 P.2d 324, 326 (Alaska App.1988). It would be highly undesirable to establish a precedent suggesting that, even though a defendant must use only the force necessary when claiming self-defense and a defendant must take only the actions necessary when relying on necessity in the context of a continuing offense, a defendant need not show any such circumspection when relying on a necessity defense for a non-continuing offense.

13. "A person commits the crime of criminal mischief ... if, having no right to do so or any reasonable ground to believe the person has such a right, ... with intent to damage property of another, the person damages property of another in an amount of $500 or more." AS 11.46.482(a). The cost of replacing just the side and rear windows was over $1,200. These acts are therefore in and of themselves sufficient to establish the elements of criminal mischief.