COMMONWEALTH *vs*. THOMAS MICHAEL FINN.

Middlesex. May 3, 1972. — June 23, 1972.

Present: TAURO, C.J., REARDON, QUIRICO, BRAUCHER, & HENNESSEY, JJ.

*Identification. Evidence,* In rebuttal, Judicial discretion, Relevancy and materiality.

There was no error at a criminal trial in a refusal by the judge to suppress positive in-court identification of the defendant by several witnesses where the judge warrantably concluded that it had been established by clear and convincing evidence that such identifications had a source independent of pre-trial identifications of the defendant by the witnesses when shown photographs by the police and at a probable cause hearing in a District Court. [208–209]

There was no error or abuse of discretion at the trial of an indictment for armed robbery of a bank in allowing the Commonwealth, in rebuttal after the defendant had rested, to introduce evidence that four days after the robbery, in which a substantial sum had been taken, the defendant had paid a substantial amount of arrearages on a nonsupport order. [209–210]

INDICTMENT found and returned in the Superior Court on August 11, 1970.

The case was tried before *Beaudreau,* J.

*Francis C. Lynch, Jr.,* for the defendant.

*Terence M. Troyer,* Assistant District Attorney, for the Commonwealth.

HENNESSEY, J.   This is an appeal under G. L. c. 278, §§ 33A–33G, from a judgment of conviction, after a jury trial, for the crime of armed robbery.   The defendant argues two assignments of error, viz., one based on his exception to the denial of his motion to suppress the in-court identification of him by three witnesses, and the other on his exceptions to the judge's rulings admitting certain evidence.   There was no error.

We summarize the facts from the judge's findings concerning the motion to suppress.   The three identifying witnesses were ladies who were employees of the Con-

sumer's Credit Union in Maynard, Massachusetts, and who were witnesses to a holdup of that bank which occurred on January 2, 1970, about 3 P.M. All three of the witnesses were from within two or three feet to ten to twelve feet of the holdup man, and each viewed him for about two to three minutes. The lighting conditions at that time and place were very good, with fluorescent lights overhead.

Within five minutes after the holdup all three of the ladies gave a composite description of the holdup man as follows: "[b]road-shouldered white tall man, well over six feet, about 45 years old, about 225 pounds, solid, not flabby; dark brown wavy hair and dark eyes; straight nose; light tan jacket; leather gloves; liquor on breath." The judge found that the description generally fitted that of the defendant, except for possibly the nose description. This description was given to the police within a half hour after the holdup. At the trial, the witnesses were unclear as to individual contributions to the joint description.

On July 8, 1970, Officer Tibbets of the Maynard police showed eight photographs to each of the three witnesses. Each showing was separate and in the respective homes of the witnesses. Each witness was alone when she picked out the defendant's photograph from the eight photographs shown to her. Each witness had no conversation with Officer Tibbets which could be construed as influencing the selection of the defendant's photograph. All the photographs were of white men; the defendant is a white man; the pictures principally showed the subject from the shoulders up to the head; the judge concluded that at least two of the eight photographs showed a "big man."

Each witness carefully looked at all photographs before picking one out, and each took from five to ten minutes to make a selection. None of the witnesses was told by Officer Tibbets of any prior identification by either of the other witnesses. The witnesses again picked out the photograph of the defendant on July 9, 1970. Only

thereafter were the witnesses told that the defendant had recently been arrested for another bank holdup.

The witnesses identified the defendant at a probable cause hearing at the District Court of Central Middlesex at Concord on July 27, 1970.

1. There was no mention within the hearing of the jury as to the pre-trial identification of the defendant's photograph, or the viewing of the defendant by the witnesses at the District Court of Central Middlesex. The defendant argues that it was error to permit the witnesses to make an identification of him before the jury because the pre-trial photographic identification procedure "was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons* v. *United States*, 390 U. S. 377, 384. *Stovall* v. *Denno*, 388 U. S. 293, 302. The defendant emphasizes the photographic identifications rather than the viewing at the District Court, apparently because the witnesses had twice viewed the photographs before they saw the defendant at the District Court.

We have considered issues similar to those raised here in a number of cases, most recently in the comprehensive discussion found in *Commonwealth* v. *Ross*, 361 Mass. 665, 672–676. There is no need here for extensive and repetitious discussion of the applicable principles.

The ultimate conclusions of the judge demonstrate that there was no error in the denial of the defendant's motion to suppress the identification testimony. The judge concluded, in substance, that it had been established by clear and convincing evidence that the identification testimony had a source independent of any pre-trial police procedures; that the photographic identification procedure was not so suggestive or tainted in any way as to give rise to a very substantial likelihood of irreparable misidentification; that all of the witnesses showed certainty of their identification in court even though they were subjected to rigorous cross-examination; and that the defendant was not denied due process of law in the identification procedures.

These ultimate conclusions of the judge are amply supported by his preliminary findings of fact, and these were in turn warranted by the evidence presented before him. His findings demonstrate that he gave appropriate consideration to all relevant factors. See *United States* v. *Wade,* 388 U. S. 28; *Stovall* v. *Denno,* 388 U. S. 293; *Simmons* v. *United States,* 390 U. S. 377; *Cooper* v. *Picard,* 316 F. Supp. 856 (D. Mass.) ; *Commonwealth* v. *Ross,* 361 Mass. 665.

We also have examined the eight photographs which were shown to the witnesses. We conclude that the judge was warranted in finding that the assortment of pictures was fairly selected.

2. There was no error in the judge's rulings which permitted the Commonwealth, over objections and exceptions of the defendant, to elicit testimony from one Wright, a probation officer from the First District Court of Southern Middlesex at Framingham, that the defendant had, on January 6, 1970, paid $600 of arrearages on a nonsupport order. The defendant contends that it was not proper to allow the evidence to be introduced in rebuttal after the defendant had rested his case; that the evidence violated the best evidence rule; and that the testimony improperly introduced a criminal record of the defendant. The rulings rested in the sound discretion of the judge and, after consideration of the several grounds of argument now presented by the defendant, we hold that there was no abuse of discretion in the rulings. Although it appears that Wright's testimony was based in part upon hearsay information he had obtained from a fellow worker, this fact became evident only in the course of cross-examination by defence counsel. Thereafter, no motion to strike the testimony was made. Further, there is no suggestion now that the testimony of the witness was not entirely in accord with the true facts.

The judge properly allowed the Commonwealth to introduce Wright as a rebuttal witness, even though, as to this area of evidence, there had been no previous refer-

ence during the trial.  The prosecutor had previously, during cross-examination of the defendant, expressed an intention of inquiring as to these facts, and the judge had deferred the inquiry in order that the defence would have opportunity to investigate other evidence related to the same issue and which might bear upon the judge's ultimate rulings as to the admissibility of this entire line of inquiry.  Nor was it required that the judge should exclude the evidence, which was otherwise admissible, because it showed criminal conduct of the defendant. *Whipple* v. *Rich,* 180 Mass. 477, 479.  *Commonwealth* v. *D'Agostino,* 344 Mass. 276, 279.

We observe, also, that the criminal conduct of the defendant thus shown was nonsupport of his wife, which was a relatively minor matter in the context of this case. Finally, the inquiry was material on the facts shown, since the jury could find that $1,087 had been taken in the holdup and the defendant had paid a $600 arrearage just four days later.

*Judgment affirmed.*