## Commonwealth *vs.* Colleen Haddock.

No. 98-P-348.

Hampshire. November 6, 1998. - January 28, 1999.

Present: Greenberg, Gillerman, & Spina, JJ.

*Assault and Battery by Means of a Dangerous Weapon. Self-Defense. Evidence,*
Self-defense. *Defense of Property. Practice, Criminal,* Required finding.

Evidence at the trial of a complaint for assault and battery by means of a
dangerous weapon (a wrought iron poker) was sufficient to warrant a
rational fact finder to conclude beyond a reasonable doubt that the
defendant did not act in reasonable self-defense of herself or her property.
[249-250]

COMPLAINT received and sworn to in the Ware Division of the
District Court Department on May 8, 1997.

The case was heard by *Peter J. Rutherford,* J.

*Jon R. Maddox* for the defendant.

*Cynthia M. Pepyne,* Assistant District Attorney, for the Com-
monwealth.

GREENBERG, J. Colleen Haddock, the defendant, concedes that
when two men came to repossess her bedroom set and telephone
on March 7, 1997, she whacked one of them with a wrought
iron poker. The question she raises on appeal is whether the
evidence was sufficient to satisfy a rational trier of fact beyond
a reasonable doubt that she did not act in reasonable self-defense
of herself or her property. See *Commonwealth* v. *Johnson,* 426
Mass. 617, 620 (1998).

At a bench trial in the District Court on a charge of assault
and battery with a dangerous weapon, the defendant timely
moved for a required finding of not guilty. Mass.R.Crim.P.
25(a), 378 Mass. 896 (1979). She neglected to move again for a
required finding at the close of all of the evidence. We neverthe-
less address her claim because a verdict based on legally insuf-
ficient evidence is "inherently serious enough to create a

substantial risk of a miscarriage of justice." See *Commonwealth* v. *McGovern*, 397 Mass. 863, 867-868 (1986); *Commonwealth* v. *Johnson*, 426 Mass. 617, 620-621 (1998).

We briefly recite the pertinent facts, presenting them, as we must, in the light most favorable to the Commonwealth. See *Commonwealth* v. *Hilton*, 398 Mass. 63, 64-65 (1986). The defendant's delinquent account drew the attention of Keith Danderante, Jr., an account manager at Rent-A-Vision, a leasing company located in Ware. Furniture, appliances, and electronic equipment are the company's staples. On March 6, 1997, he was dispatched to repossess merchandise for which the defendant's payments had lapsed. On that occasion there was no trouble and some items were taken back without incident.

On the following day, March 7, Danderante returned to the defendant's residence with a coworker, Jeff LaFleur, to complete the task of repossession. They drove a company van which had a Rent-A-Vision logo painted on it. In the defendant's driveway they met the defendant's teenage daughter and asked whether her mother was at home. She went inside saying, "Hold on, I'll be right back. I'm going to get my mother." The two men found their way into the home and waited inside the front room of the house. After a brief delay, the defendant appeared.

Argument about their visit, no doubt aggravated by a demand that the defendant pay the arrears or lose the household goods, burst into violence. The defendant asked them to leave. When they hesitated, the defendant repeated her request in no uncertain terms. The defendant began shouting and grabbed an instrument, described by Danderante as a "fire poker." A startled LaFleur started to leave but within seconds the defendant struck him on the right thigh. He fended off a second blow aimed at his head. At this point, necessity and company policy required retreat. Both of them fled to a nearby convenience store to call the police for pacification. There was evidence that LaFleur went to the hospital and was treated for contusions to the leg and forearm.

For her part, the defendant largely confirmed the Commonwealth's version of the facts — with one key exception. She testified that after she had asked the men to leave, LaFleur became abusive, shoving her as she attempted to prevent him from moving further inside her house. The defendant stated that LaFleur's manner and actions had put her in fear for her safety, and that she had attacked LaFleur with the fireplace tool in self-

defense and in defense of her property. Other pertinent facts are incorporated into our analysis as necessary.

As we have stated, at trial the defendant relied on the affirmative defenses of self-defense and defense of property. Contrast *Commonwealth* v. *Hakkila*, 42 Mass. App. Ct. 129, 130 (1997). Where there is credible evidence to raise these defenses, the burden is on the Commonwealth to prove beyond a reasonable doubt that the defendant acted with force that was excessive in kind or degree. See *Commonwealth* v. *Donahue*, 148 Mass. 529, 531, 532 (1889); *Commonwealth* v. *Stokes*, 374 Mass. 583, 591-593 (1978); *Commonwealth* v. *Fluker*, 377 Mass. 123, 127 (1979). See also *Commonwealth* v. *Reed*, 427 Mass. 100, 102 (1998). The defendant argues that both defenses were fairly raised when she introduced her own version of the events in evidence and that the government's case was legally insufficient to prove that her conduct was not excused under either defense.

In determining whether a defendant's otherwise unlawful use of nondeadly force may be justified as a valid exercise of self-defense, the fact finder must consider whether (1) the defendant has a reasonable concern for her safety, (2) the defendant pursued all possible alternatives to combat, and (3) the force used was no greater than required in the circumstances. See *Commonwealth* v. *Bastarache*, 382 Mass. 86, 104-105 (1980); *Commonwealth* v. *Pike*, 428 Mass. 393, 395 (1998); *Commonwealth* v. *Pichardo*, 45 Mass. App. Ct. 296, 301-302 (1998). Where deadly force[1] is involved — it becomes a question for the fact finder whether the defendant's use of the fireplace tool constituted deadly or nondeadly force, see *Commonwealth* v. *Cataldo*, 423 Mass. 318, 322-323 (1996); cf. *Commonwealth* v. *Appleby*, 380 Mass. 296, 304 (1980) — the second two prongs of the test are the same, but a defendant must show that she had a reasonable fear that she was "in imminent danger of death or serious bodily harm, and that no other means will suffice to prevent such harm." *Commonwealth* v. *Cataldo*, *supra* at 321. As for defense of property (at least in the sense intended here of ejecting trespassers),[2] the relevant inquiry is whether (1) the defendant used only nondeadly force, and (2) the force used

---

[1] "Deadly force" is defined as force intended to cause death or serious bodily injury. See *Commonwealth* v. *Cataldo*, 423 Mass. 318, 322-323 (1996).

[2] The concept of defense of property has been little explicated in the Commonwealth's case law. It relates to the right to use limited force to defend

was "appropriate in kind and suitable in degree, to accomplish the purpose." *Commonwealth* v. *Goodwin*, 57 Mass. 154, 158 (1849). See *Commonwealth* v. *Hakkila*, 42 Mass. App. Ct. at 130.

In applying these standards for the justification of self-defense and, in turn, use of force, no mandatory presumption arises from the fact that a defendant has met her threshold burden. See *Commonwealth* v. *Fluker*, 377 Mass. at 127. Meeting the initial burden merely provides a permissible basis for an inference that the defense in question applies, and the judge is required to so charge the jury. The fact finder, however, ultimately remains free to disbelieve (or credit) any evidence offered by either party relating to the availability of such defenses in a particular case.[3]

Here, there was conflicting testimony as to whether LaFleur used force against the defendant or threatened her in any manner. Likewise, there was evidence that the defendant continued to strike at LaFleur even after he had begun to retreat. Finally, even assuming that the defendant was entitled to use force, it was an open question whether her decision to employ a wrought iron fireplace tool constituted, in the circumstances, the minimum necessary force to accomplish her purpose or whether her use of that weapon constituted deadly or nondeadly force.

As we review the evidence brought out at trial, the judge may have found that the defendant's actual belief that the situation required the use of deadly force was simply not objectively warranted.[4] Even if plausible, one must pause to ask whether the amount of force used was excessive. The right to use deadly

---

personal property from theft or destruction and real property from unwelcome invasion. In *Commonwealth* v. *Donahue*, 148 Mass. 529, 531 (1889), the court held that "a man may defend or regain his momentarily interrupted possession by the use of reasonable force, short of wounding or the employment of a dangerous weapon."

[3]Nothing in what we have said here conflicts with our recent opinion in *Commonwealth* v. *Keita*, 45 Mass. App. Ct. 550, 554-556 (1998). In that case, we did nothing to alter the Commonwealth's burden of proof where an affirmative defense is raised. In *Keita*, we simply held that the Commonwealth had failed to adduce sufficient evidence on all of the elements of the crime charged — including proof of sanity — to meet the traditional requirements of *Commonwealth* v. *Latimore*, 378 Mass. 671, 677 (1979).

[4]With respect to the issue of self-defense, the defendant arguably relied at trial on evidence of so-called "battered women's syndrome," as that term is used in connection with G. L. c. 233, § 23F. Despite suggestions to the contrary in the defendant's appellate brief, the fact that the defendant may

force, such as swinging a fireplace poker at someone's head, arises at a somewhat higher level of danger than the right to use one's fists in self-defense. Compare *Commonwealth* v. *Baseler*, 419 Mass. 500, 502 (1995), and cases cited. Finally, with respect to defense of property, the judge may have concluded that the use of deadly force was a miscalculation on the defendant's part. A person may use no more force than reasonably necessary to remove a trespasser.

As stated in *Commonwealth* v. *Fluker*, 377 Mass. at 128, "[t]here is no constitutional principle which bars the conviction of a defendant when there is evidence warranting [guilt] and also evidence warranting, but not requiring, a finding that the defendant acted in self-defense." In view of the existence of the various competing permissible inferences here, the judge properly denied the defendant's motion for a required finding of not guilty.

*Judgment affirmed.*

---

have been the victim of domestic abuse in the past does not provide a blanket justification for her to use force in resolving disputes. To the extent that such evidence was relevant at all to the issue of self-defense here, it was but one of many factors for the fact finder to consider in determining the reasonableness of the defendant's conduct.