NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReportersjc.state.ma.us

SJC-12313

COMMONWEALTH  vs.  JOHNELLE M. BROWN.


Middlesex.     November 7, 2017. - March 16, 2018.

Present:  Gants, C.J., Gaziano, Lowy, Budd, Cypher, & Kafker,
JJ.


Assault and Battery.  Intimidation of Witness.  Witness,
     Intimidation.  District Court, Jurisdiction.  Practice,
     Criminal, New trial, Assistance of counsel, Instructions to
     jury, Sentence, Allocution, Restitution.  Restitution.



     Complaint received and sworn to in the Cambridge Division
of the District Court Department on May 2, 2014.

     The case was tried before Michele B. Hogan, J.; a
restitution hearing was held before Daniel C. Crane, J.; and a
motion for postconviction relief was heard by Hogan, J.

     The Supreme Judicial Court granted an application for
direct appellate review.


     Luke Rosseel for the defendant.
     Melissa Weisgold Johnsen, Assistant District Attorney, for
the Commonwealth.


     CYPHER, J.  A jury in the District Court convicted the

defendant, Johnelle M. Brown, of assault and battery and witness

intimidation.  After beginning the sentencing hearing, the trial judge revoked the defendant's bail and delayed sentencing for four days.  After reconvening, the judge imposed a sentence of a one-year commitment to a house of correction, suspended for two years, probation, and restitution.  The defendant disputes the District Court's jurisdiction over the witness intimidation prosecution.  The defendant also appeals from the denial of her motion for a new trial, revocation of bail, and order of payment of restitution.  We affirm.

Facts.  We recite the facts as the jury could have found them, reserving certain facts for later discussion.

Mahboobe Aria and Mehdi Aria[1] managed a restaurant.  On April 6, 2014, the restaurant closed at 2:30 A.M.  At approximately 2:40 A.M., Mahboobe and Mehdi were completing tasks relevant to closing the restaurant.  Mehdi was outside, cleaning the outdoor seating.  Mahboobe was inside.

The defendant and a man arrived in an automobile and parked outside the restaurant.  The man was not identified by name at trial, but the defendant's motion for a new trial, appellate brief, and affidavits identify this man as Tyrell Carr.  Carr remained in the automobile while the defendant went into the

---

[1] We refer to Mahboobe Aria and Mehdi Aria by their first names to avoid confusion.

restaurant. Mahboobe was near the cash register when the defendant walked into the restaurant.

Mahboobe told the defendant that the restaurant was closed. The defendant said that she needed to use the bathroom. Mahboobe refused to allow the defendant to use the bathroom because Mahboobe had already cleaned it. The defendant said that she would "call [her] boyfriend" if Mahboobe refused her use of the bathroom; Mahboobe still refused. The defendant took a bottle of juice from a refrigerator in the restaurant, placed it in front of the register, and told Mahboobe that she was going to purchase it. Mahboobe replied that the credit card machine and cash register were already closed so she could not make any more sales. The defendant opened the door to the restaurant and called out to someone. Carr came inside the restaurant and loudly asked Mahboobe why she was not allowing the defendant to use the bathroom. Mahboobe reiterated that the bathroom was closed.

Carr waved a credit card at Mahboobe and offered to pay for the bottle of juice the defendant had placed on the counter. Mahboobe refused payment, explaining that the restaurant and credit card machine were closed. Mehdi entered the restaurant and asked the defendant and Carr to leave. The defendant took the juice bottle off the counter and threw it in Mahboobe's direction. The bottle struck glass that separates the cashier

from the kitchen. Carr grabbed Mehdi. Carr hit and slapped Mehdi's face and pulled his shirt. While Carr struggled with Mehdi, the defendant kicked the bathroom door. Mahboobe retrieved a telephone from underneath the cash register and moved out from behind the counter toward the defendant. Mahboobe was standing one to two feet away from the defendant when she tried to dial 911. The defendant grabbed the wrist of the hand in which Mahboobe was holding the telephone and said, "You're bad fuck." After approximately one minute, the defendant let go of Mahboobe's wrist. As Mehdi and Carr continued to fight, Mahboobe left the restaurant and telephoned 911. The defendant followed. The defendant asked Mahboobe why she telephoned the police. The defendant then punched Mahboobe in the face, causing Mahboobe to drop the telephone. The telephone fell to the ground and broke. A man was inside of a nearby bar when he "heard a commotion next door, like tables and chairs being banged around." He and a bar security employee went outside and saw Mahboobe being punched in the face.

The defendant opened the door to the restaurant and told Carr that Mahboobe had telephoned the police. Carr came out of the restaurant and drove away with the defendant in a vehicle that had been parked on the street.

A police officer responded to the 911 call. Upon arrival, he noticed that Mahboobe had a red mark on her face and Mehdi's head and mouth were bleeding.

*Discussion.* 1. *Jurisdiction.* The defendant argues that, following our decision in Commonwealth v. Muckle, 478 Mass. 1001 (2017), the District Court lacked jurisdiction over her case.[2] General Laws c. 218, § 26 (jurisdiction statute), confers jurisdiction upon the Boston Municipal Court (BMC) and District Court over prosecutions for "intimidation of a witness or juror under [G. L. c. 268, § 13B]." General Laws c. 268, § 13B (1) (c) (i), (iii) (intimidation statute), proscribes intimidation of, inter alia, "a witness or potential witness[,] . . . a judge, juror, grand juror, prosecutor, police officer, [F]ederal agent, investigator, defense attorney, clerk, court officer, probation officer or parole officer." In Muckle, supra at 1003, we held that, "the express inclusion of witnesses and jurors [in G. L. c. 218, § 26,] excludes all other persons listed in [G. L. c. 268, § 13B,] who are not expressly included." In that case, the defendant was accused of intimidating an attorney in a case

_____

[2] The defendant raised this claim for the first time in a letter pursuant to Mass. R. A. P. 16 (l), as amended, 386 Mass. 1247 (1982), because Commonwealth v. Muckle, 478 Mass. 1001 (2017), was decided after she had submitted her brief. Nonetheless, we consider the defendant's argument because issues of "subject matter jurisdiction 'may be raised at any time.'" Commonwealth v. DeJesus, 440 Mass. 147, 151 (2003), quoting Commonwealth v. Cantres, 405 Mass. 238, 240 (1989).

to which he was a party.  Commonwealth v. Muckle, 90 Mass. App. Ct. 384, 385-388 (2016).  We therefore affirmed the dismissal of the complaint in the BMC for lack of jurisdiction.  Muckle, 478 Mass. at 1004.

The defendant seeks to analogize her case to Muckle, arguing that the District Court did not have jurisdiction because, at the time of the assault, Mahboobe was not a "witness" but was a "potential witness."  The defendant seeks to draw a distinction between a "witness" and a "potential witness" in the intimidation statute.  However, when assessing the District Court's jurisdiction, we must begin our interpretation with the meaning of "witness" in the jurisdiction statute.  We interpret a statute's text, construing its words "by the ordinary and approved usage of the language."  Energy Express, Inc. v. Department of Pub. Utils., 477 Mass. 571, 576 (2017), quoting Meikle v. Nurse, 474 Mass. 207, 210 (2016).  We are bound to "interpret the statute so as to render the legislation effective, consonant with sound reason and common sense."  Harvard Crimson, Inc. v. President & Fellows of Harvard College, 445 Mass. 745, 749 (2006).

The term "witness" is broadly used to characterize an individual with information that is pertinent to an investigation or case and is often used interchangeably with "potential witness."  See Commonwealth v. Rakes, 478 Mass. 22,

41 (2017) (describing individuals who might testify in future as "witnesses" and "potential witnesses"); Commonwealth v. Squires, 476 Mass. 703, 711 (2017) (Gaziano, J., dissenting) (using "potential witnesses" to describe those who might see crime occurring); Commonwealth v. Williams, 475 Mass. 705, 708 (2016) (using "potential witnesses" to describe people interviewed by police); Commonwealth v. Watkins, 473 Mass. 222, 239-241 (2015) (using "witnesses" to describe people who testified during trial and those who did not testify but had relevant information that could have been offered during trial); Commonwealth v. Brewer, 472 Mass. 307, 311 n.10, 313-315 (2015) (using "witness" to describe person present at shooting who gave statement to police, and describing people who had information to share at trial but did not testify as "witnesses" and "potential witnesses"); Commonwealth v. Collins, 470 Mass. 255, 270-273 (2014) (using "potential witness" to describe those on witness list during trial); Commonwealth v. Robinson, 444 Mass. 102, 110-111 (2005) (using "witness" to describe person's status when he was going to testify at hearing and after hearing had concluded); Commonwealth v. Finn, 362 Mass. 206, 207-208 (1972) (using "witnesses" to describe individuals present at scene of crime when discussing investigatory conversations with police and testimony at trial); Commonwealth v. McCreary, 45 Mass. App. Ct. 797, 800 (1998) (using "prospective witness," "potential

witness," and "witness" when describing facts of several witness intimidation cases). The myriad uses of "witness" and its frequent convergence with "potential witness" suggest the ordinary meaning of "witness" encompasses victims of intimidation who could also be described as "potential witnesses." Such a holding is consistent with our decision in Muckle, where we interpreted "juror" in the jurisdictional statute to encompass "juror" and "grand juror" in the intimidation statute.

The distinction advocated by the defendant would cause the District Court to gain and lose jurisdiction repeatedly over prospective witness intimidation prosecutions during the course of a crime, investigation, trial, and subsequent proceedings. Indeed, Mahboobe's status at the time of the assault could be characterized as both a "witness" and a "potential witness." She was a "witness" to the assault of Mehdi with information to provide to the 911 operator and police officers and a "potential witness" to further criminal activity. When the trial commenced, she was a "potential witness" who might have been called to testify and, upon being called, became a "witness." Common sense dictates that "witness" in the jurisdictional statute includes "a witness or potential witness at any stage of a criminal investigation, grand jury proceeding, trial or other criminal proceeding of any type," as protected by G. L. c. 268,

§ 13B (1) (c) (i).  Therefore, the District Court properly exercised jurisdiction over the prosecution of the defendant for witness intimidation.

2.  Motion for a new trial.  The defendant moved for a new trial, arguing that counsel was constitutionally ineffective, the jury were improperly instructed, her right to allocution was violated, her right not to be placed in jeopardy twice was violated, and her restitution order was invalid.[3]  In support of her motion for a new trial, the defendant submitted numerous affidavits and exhibits.  After a nonevidentiary hearing, the judge denied the defendant's motion for a new trial "under all theories" but did not issue a written decision.

The defendant appeals from the denial of her motion for a new trial, repeating the grounds on which she sought relief below.  A judge may grant a motion for a new trial "if it appears that justice may not have been done."  Mass. R. Crim. P. 30 (b), as appearing in 435 Mass. 1501 (2001).  The judge may decide the motion on the basis of affidavits if those affidavits and the motion raise no "substantial issue."  Mass. R. Crim. P.

---

[3] We address the merits of each of the defendant's claims, but do not necessarily analyze each argument she advances in support of those claims.  To the extent that we have not specifically addressed other points made by the defendant in her brief, they "have not been overlooked.  We find nothing in them that requires discussion."  Commonwealth v. Domanski, 332 Mass. 66, 78 (1954).

30 (c) (3), as appearing in 435 Mass. 1501 (2001). "The decision on a motion for a new trial, as well as the decision whether to decide the motion on the basis of affidavits or to hear oral testimony, is left largely to the sound discretion of the judge." Commonwealth v. Stewart, 383 Mass. 253, 257 (1981). We review the judge's denial of the defendant's motion for a new trial for clear error, according greater deference to that decision where, as here, the motion judge also presided over the trial. Commonwealth v. Leng, 463 Mass. 779, 781 (2012) ("We extend special deference to factual determinations made by a motion judge who also was the trial judge . . ."); Commonwealth v. Degro, 432 Mass. 319, 334 (2000) ("A motion judge's findings will not be disturbed absent clear error").

a. Ineffective assistance of counsel. In his opening statement, defense counsel argued that the defendant was defending her property, a debit card that Mahboobe had taken from her and refused to return. Defense counsel presented no witnesses; instead, he elicited testimony in support of that defense during cross-examination. The defendant claims that trial counsel was ineffective in failing to develop sufficient evidence of the defense of property and in advising her not to testify. Specifically, she alleges that trial counsel should have called Carr to testify in support of her defense and that he should not have advised the defendant not to testify. As

explained infra, even if the information provided in the affidavits were presented at trial, when considered in context with the testimony of the Commonwealth's witnesses, "we are not persuaded that [testimony] likely would have influenced the jury's decision." Commonwealth v. Duran, 435 Mass. 97, 103-104 (2001) (no ineffective assistance of counsel where potential testimony that could have resulted from investigation would have been outweighed by "strong" contradictory evidence).

During cross-examination, defense counsel elicited from the responding police officer that Mahboobe gave him the defendant's debit card. In contrast, Mahboobe testified that the police found the debit card on the restaurant's floor. Counsel sought to exploit the difference between these statements to suggest that Mahboobe had kept the defendant's debit card, so the defendant had had to use force to recover the card. The judge declined counsel's request for a "defense of property" jury instruction and permission to argue that theory in his closing argument.[4]

---

[4] A defendant may successfully assert a defense of property defense if "(1) the defendant used only nondeadly force, and (2) the force used was 'appropriate in kind and suitable in degree, to accomplish the purpose.'" Commonwealth v. Haddock, 46 Mass. App. Ct. 246, 248-249 (1999), quoting Commonwealth v. Goodwin, 57 Mass. 154, 158 (1894). The defendant must present "credible evidence" that she was defending her property in order to raise such a defense. Haddock, supra at 248.

In furtherance of her claim in the motion for a new trial, the defendant submitted affidavits from Carr and herself about what their testimony would have been had defense counsel called them as witnesses.[5]  Implicit within the defendant's argument is the contention that, after investigating, counsel would have introduced Carr as a defense witness.  See Commonwealth v. Lang, 473 Mass. 1, 15-16 (2015) (Hines, J., concurring) ("a claim of ineffective assistance of counsel that focuses on counsel's asserted failure to investigate a . . . defense is generally, and perhaps necessarily, linked to a claim that counsel was ineffective for not presenting . . . [that] defense at trial").  On appeal, the defendant has not demonstrated that the judge committed a clear error in denying the motion for a new trial.

Counsel was ineffective if his conduct fell "measurably below that which might be expected from an ordinary fallible lawyer" and "likely deprived the defendant of an otherwise

---

The defendant's ineffective assistance of counsel argument is premised on the theory that counsel was ineffective for not introducing sufficient evidence to merit a defense of property instruction.  In making such an argument and failing to raise any claim that the judge erred, the defendant implicitly concedes that the evidence presented at trial was insufficient to warrant a defense of property instruction.

[5] Mahboobe is not identified by name in the affidavits, but it appears that both parties are referring to Mahboobe when describing their interactions with the woman working at the restaurant.  Therefore, when summarizing the affidavits, we use Mahboobe's name where appropriate.

available, substantial ground of defence." Commonwealth v. Saferian, 366 Mass. 89, 96 (1974). "In regard to the latter requirement, there ought to be some showing that better work might have accomplished something material for the defense" (quotations omitted). Commonwealth v. Bell, 460 Mass. 294, 303 (2011), quoting Commonwealth v. Johnson, 435 Mass. 113, 123 (2001).

Carr's affidavit, considered with the evidence presented by the Commonwealth, is insufficient to show that his testimony "might have accomplished something material for the defense." See Commonwealth v. Satterfield, 373 Mass. 109, 115 (1977). Carr's affidavit is best summarized as follows: Carr followed the defendant into the restaurant after he witnessed an argument inside the restaurant; the defendant told Carr that Mahboobe had her debit card; both the defendant and Carr left the restaurant at the urging of Mahboobe; Mahboobe held the defendant's debit card over her head while the defendant struggled to get the card; the defendant's "hand came into contact with [Mahboobe's] face"; and both Carr and the defendant left the area in Carr's automobile. This potential testimony is only credible if all percipient witnesses are disbelieved. See Commonwealth v. Jenkins, 458 Mass. 791, 809 (2011) ("Even had the attorney's advice been substandard, it would have made no difference. For

the defendant to prevail, the jury would have had to disbelieve the testimony of virtually every other witness").

Counsel exploited inconsistencies in the testimony about whether the debit card was found on the floor or given to police by Mahboobe as skillfully as the facts permitted. Although this discrepancy could have bolstered the proposed defense testimony, such a sliver of support is not enough to yield a conclusion that this testimony would have changed the outcome. Therefore, the defendant was not prejudiced by the lack of testimony and the judge did not err in denying the motion for a new trial.

The second claim raised under the rubric of ineffective assistance of counsel is the defendant's claim that counsel's advice caused her to unknowingly waive her right to testify. Testifying in one's own criminal defense is a fundamental right that must be waived knowingly and intelligently. Jenkins, 458 Mass. at 803. The defendant has the burden of proving by a preponderance of the evidence that, absent counsel's advice, she would have testified. Commonwealth v. Lucien, 440 Mass. 658, 671 (2004). "It is not enough to say that counsel had discouraged [her] from testifying." Id.

The judge did not abuse her discretion when she denied the motion for a new trial. The defendant's affidavit is best summarized as follows: she asked Mahboobe to use the restroom; Mahboobe said the defendant would have to make a purchase in

order to use the restroom; the defendant gave Mahboobe her debit card and tried to make a purchase; Mahboobe took the defendant's debit card but told the defendant she did not meet the ten-dollar minimum required for all debit card purchases; the defendant asked for her debit card; Mahboobe refused to return the debit card; Carr entered the restaurant and encouraged the defendant to leave; Mahboobe ushered both Carr and the defendant out of the restaurant, still holding the defendant's debit card; outside, Mahboobe held the defendant's debit card over the defendant's head; while the defendant reached for the card, her hand hit Mahboobe; the defendant never saw Mahboobe holding a telephone and did not knock a telephone from Mahboobe's hand; she and Carr left in Carr's automobile.

The defendant's affidavit alleges that she would have testified had counsel informed her that her testimony would have been necessary to advance a defense of property defense. When asking for a jury instruction on defense of property, counsel indicated that he had discussed the decision to testify with the defendant after Mahboobe testified. The defendant was aware of all testimony against her. Although counsel may have misjudged the minimum showing required to merit a defense of property jury instruction, the defendant nonetheless knew that the jury had heard no testimony about Mahboobe's keeping the defendant's debit card and the defendant seeking to recover it. "It can

reasonably be inferred that the defendant, after listening to the testimony of the Commonwealth witnesses, realized that the jury would not hear [her] version of the events unless [she] placed it before them." Degro, 432 Mass. at 337. Nothing in the record, including the defendant's affidavit, indicates that counsel denied the defendant the opportunity to make her own decision. See Commonwealth v. Marrero, 459 Mass. 235, 242 (2011) (defendant did not prove that counsel sharing his "view" that defendant should not testify caused defendant involuntarily to waive right to testify). The judge did not abuse her discretion by concluding that the defendant simply did not meet the burden of proving that her waiver was involuntary, unintelligent, or unknowing.

b. Inadequate jury instructions. The judge told the jurors: "It's essential that you confine your deliberations only to the evidence which is presented to you in the courtroom." The defendant contends that because the judge did not instruct the jury to refrain from researching the case on the Internet, jurors could have searched for information about the defendant and found two news articles published online about the defendant's past alleged criminal activity. The defendant did not object to this omission at trial or request that the judge specifically instruct the jury to refrain from Internet research. Therefore, we consider whether the omission was error

and, if so, whether it created a substantial risk of a miscarriage of justice. Commonwealth v. Horne, 476 Mass. 222, 225-226 (2017).

The absence of a jury instruction specifically prohibiting research on the Internet is not, in and of itself, reversible error. The judge instructed the jury to refrain from outside research, using social media, visiting the scene of the incident, and "talk[ing] to anyone outside of the jury about the case." The better practice would have been to include in the instructions a prohibition on Internet research. See Commonwealth v. Rodriguez, 63 Mass. App. Ct. 660, 678 n.11 (2005) ("[G]iven the simplicity, speed, and scope of Internet searches, allowing a juror to access with ease extraneous information about the law and the facts, trial judges are well advised to reference Internet searches specifically when they instruct jurors not to conduct their own research or investigations"). But this omission was not error where the judge's instruction forbade consideration of any outside information.

Further, the defendant has demonstrated no substantial risk of a miscarriage of justice. Jurors are presumed to have followed the judge's instruction not to consider any outside information. See Commonwealth v. Watkins, 425 Mass. 830, 840 (1997) ("We presume that a jury follow all instructions given to

it").  Nor is there any evidence in the record to rebut that presumption.  The record is devoid of evidence of any jurors using the Internet for any outside research, including discovering any information about the defendant.[6]  Without any indication that the jury were exposed to extrajudicial information about the defendant, there is no substantial risk of a miscarriage of justice in allowing the defendant's convictions to stand.

   c.  The sentencing hearing.  After her convictions, the judge held a sentencing hearing.  The Commonwealth recommended a one-year sentence in a house of correction, with the defendant serving ninety days and the balance of the sentence suspended for two years.  Defense counsel requested probation.  The judge allowed defense counsel to present mitigating information about the defendant, including details of her background and that she

---

   [6] The defendant's argument that she could not build such a record because she could not contact jurors is without merit. Rule 3.5 (c) of the Massachusetts Rules of Professional Conduct, as appearing in 471 Mass. 1428 (2015), permits attorneys to initiate contact with jurors after a verdict.  The attorney must notify counsel for the opposing party five business days before contacting any juror.  This rule went into effect on July 1, 2015.  An attorney may contact jurors who were discharged before July 1, 2015, "if the case was on appeal as of that date." Commonwealth v. Moore, 474 Mass. 541, 551 (2016).  The defendant filed her notice of appeal from the verdicts on February 5, 2015, and submitted her motion for a new trial on April 6, 2016. The defendant filed her notice of appeal from the denial of the motion for a new trial on January 3, 2017, allowing her notice of both the rule and our interpretation of its retroactivity.

was "very sorry" about the incident.  The judge then allowed the defendant to speak.  The defendant told the judge that she wished she had testified.  The judge told the defendant that she had had an opportunity to testify at trial and, now that the trial was over, the judge was "not going to hear [the defendant's] side."  The defendant further indicated her willingness to testify or to be subjected to the Commonwealth's cross-examination.  The judge then adjourned and ordered the defendant held without bail until the hearing resumed four days later.[7]

When the hearing resumed, defense counsel spoke more about the defendant's background and requested mercy in the defendant's sentencing, reporting that she had been "absolutely distraught" while in custody.  The judge addressed the defendant, saying, "I trust that I got your attention by holding you over the weekend in custody."  The judge then sentenced the defendant to one year in a house of correction, suspended for two years, and ordered her to pay restitution.[8]

---

[7] The final day of trial and the first sentencing hearing were held on Thursday, January 22, 2015.  The judge adjourned the hearing and held the defendant without bail until Monday, January 26, 2015.

[8] The judge also required the defendant to have no contact with the Arias or their restaurant, to have a mental health evaluation, and to attend anger management.

i.  Right to allocution.  The modern meaning of "[a]llocution is . . . the right to make a statement to the sentencing judge before he pronounces sentence."  United States v. Foss, 501 F.2d 522, 530 n.3 (1st Cir. 1974).  The defendant urges us to find a constitutional right to allocution and to hold that the judge violated that right by not allowing the defendant to finish speaking during the sentencing hearing.  We have never held that a defendant has a constitutional right to allocution, and we decline to do so now.

A defendant's right to speak in his or her own defense was recognized by the common law as early as 1682.  Marshall, Lights, Camera, Allocution:  Contemporary Relevance or Director's Dream?, 62 Tul. L. Rev. 207, 209 (1987).  This was an opportunity for the defendant to offer what would now be considered defenses as defendants were not permitted to testify on their own behalf.  Id.  In 1689, the court's failure to ask the defendant if he had anything to say before a sentence was imposed required reversal.  Green v. United States, 365 U.S. 301, 304 (1961), citing Anonymous, 3 Mod. 265, 266, 87 Eng. Rep. 175 (K.B.).  Allocution has survived in our modern Federal criminal justice system as a mandate that a judge "permit the defendant to speak or present any information to mitigate the sentence."  Fed. R. Crim. P. 32(i)(4)(A)(ii).  "Allocution, although always required under [F]ederal procedure to be invited

and allowed, is not -- at least so far as the invitation is concerned -- a constitutional right essential to fundamental fairness."  United States v. Leavitt, 478 F.2d 1101, 1104 (1st Cir. 1973).  There is no Federal constitutional right to allocution.  Id.

Our approach in the Commonwealth, Mass. R. Crim. P. 28 (b), 378 Mass. 842 (1979), is a similar, but more narrow view.[9]  Here, the defendant may speak for herself or have her attorney "present mitigating factors prior to sentencing."  Commonwealth v. Rancourt, 399 Mass. 269, 278 (1987).  We discern no source of a constitutional or common-law right to allocution separate from the opportunity provided by rule 28, and we see no reason to read one into the State Constitution, as the defendant has an opportunity to be heard and to testify on her own behalf.

The requirements of rule 28 were satisfied when her attorney made a statement during sentencing and the judge permitted the defendant to speak.  The defendant contends that because the judge allowed her to speak at all, the judge erred in ceasing the defendant's allocution before the defendant finished speaking.  The judge had no obligation to do more than satisfy the requirements of rule 28, either through statements

---

[9] "Before imposing sentence the court shall afford the defendant or his counsel an opportunity to speak on behalf of the defendant and to present any information in the mitigation of punishment."  Mass. R. Crim. P. 28 (b), 378 Mass. 842 (1979).

from the defendant or the defendant's attorney.  Even in satisfying rule 28, some reasonable limits are necessary.  See Commonwealth v. McKay, 23 Mass. App. Ct. 966, 968 (1987) (no error where sentencing judge allowed two people familiar with defendant "to address the court on the defendant's background and character but refused" to allow testimony about circumstances of crime).  The judge did not abuse her discretion by limiting the defendant's statements to permissible and relevant topics within rule 28.  The rule 28 opportunity to speak is not an unlimited right of a defendant to speak endlessly on irrelevant subjects or in a disruptive manner.  Here, the defendant contested the facts presented at trial.  Such statements are extraneous in a sentencing hearing and were therefore properly excluded.

ii.  Double jeopardy.  The defendant contends that the judge punished her twice for a single offense, in violation of double jeopardy principles, when the judge held the defendant without bail pending the completion of the sentencing hearing and then imposed a sentence during the sentencing hearing.

In order to determine whether a penalty violates double jeopardy principles, we analyze the statute that authorizes the restriction on the defendant's liberty.  See Hudson v. United States, 522 U.S. 93, 99-100, 103 (1997).  The defendant argues that the restriction on her liberty was imposed pursuant to

G. L. c. 276, § 58 (bail statute).  The bail statute does not, however, apply to postconviction confinement.  Rather, the bail statute governs pretrial detention.  Commonwealth v. Morales, 473 Mass. 1019, 1020 (2016) (bail statute "establishes conditions for a defendant's initial release after arraignment, pending adjudication of the charges against him").  Once a conviction is attained, bail issues are moot.  Commesso v. Commonwealth, 369 Mass. 368, 374 (1975) ("Trial should not ordinarily be delayed pending bail review even though a conviction will make the bail issue moot").  Cf. Mendonza v. Commonwealth, 423 Mass. 771, 777 (1996) ("both cases are moot since both [defendants] have admitted guilt and are no longer subject to [G. L. c. 276,] § 58A").  The defendant's bail was revoked after she was convicted.  She was not punished twice for the same conviction.[10,11]

---

[10] The defendant's time in custody was not a punishment, as the defendant urges us to hold.  Even if it were a punishment, the defendant would nonetheless not have been punished twice in violation of double jeopardy protections.  Had the judge sentenced the defendant to any period of incarceration or had the defendant violated the terms of her probation and had to serve her suspended sentence, the four nights in custody would have been credited toward that sentence.  See G. L. c. 279, § 33A.

[11] Because the bail statute does not apply, we do address the defendant's additional argument that the judge did not comply with the statute's procedural requirements.

Further, judges have discretion to revoke bail after a conviction. See Mass. R. Crim. P. 28 (b). At the conclusion of a criminal trial resulting in conviction, a judge is in the best position to determine whether it is necessary to revoke bail. The Commonwealth moved for sentencing immediately after the jury delivered their verdicts, but was not obligated to do so for seven days. See G. L. c. 279, § 3A. The judge's decision was not an unreasonable delay where the sentencing hearing was still held earlier than required by statute. Despite the defendant's contention, the judge's statement that she hoped she "got [the defendant's] attention by holding [her] over the weekend in custody" was not an abuse of discretion.[12] That statement came after defense counsel requested that the judge place the defendant on probation and reported "the last few days being held in custody has really opened her eyes." The defendant's argument is essentially a contention that the judge simply could not revoke bail.[13] Bail revocation after a conviction is decidedly within a trial judge's powers. We discern no error.

---

[12] A judge, of course, must be careful not to create the appearance of intemperance.

[13] The defendant's suggestion that a judge could not revoke bail and postpone a sentencing hearing for a reasonable time encourages hasty decision-making that could harm many defendants in the future. Postponing sentencing provides a judge the opportunity to think about the sentence.

d.  Restitution hearing.  At the close of the sentencing hearing, the judge scheduled a restitution hearing and said, "I'm going to hold it because I know the facts of the case."  On the day of the hearing, the trial judge was not at the court house and a different judge presided over the restitution hearing.  The defendant requested a continuance so that the trial judge could preside over the hearing.  The hearing judge denied this request and proceeded with the hearing.  Mahboobe testified about the damage the defendant caused to the restaurant and her telephone.  Defense counsel conceded that each item was broken during the assault.  Mahboobe provided written estimates of repair costs and a receipt for replacing the telephone.  The judge ordered the defendant to pay $3,100 in restitution.

The defendant identifies three issues in the disposition of her restitution hearing:  the restitution judge did not follow orders entered by the trial judge; her restitution order was not supported by adequate evidence; and counsel at the restitution hearing was ineffective.

The defendant urges us to vacate her restitution order because a judge other than the trial judge conducted the restitution hearing.  We review the decision to proceed with the hearing for abuse of discretion.  Commonwealth v. Baro, 73 Mass. App. Ct. 218, 224 (2008).  A judge may preside over another

judge's proceedings following a verdict if the trial judge is "absen[t]" or "unavail[able]" and the judge believes he or she is able to fulfil the needs of the hearing. Mass. R. Crim. P. 38 (c), 378 Mass. 916 (1979). Here, the trial judge was absent, and the restitution hearing judge's decision to preside over the hearing was far from an abuse of discretion. A restitution hearing addresses the discrete issue of damages. The judge needed no special knowledge of the trial unique to the trial judge to assess the evidence presented at the hearing. He was capable of presiding over the hearing with no prejudice to either party.

The defendant claims that the Commonwealth did not meet its burden of proving the amount of the loss. The facts at the restitution hearing need only to be proved by a preponderance of the evidence, not to the higher standard required at the criminal trial. See Commonwealth v. Denehy, 466 Mass. 723, 740 (2014). We review the judge's assessment of restitution for abuse of discretion. Commonwealth v. McIntryre, 436 Mass. 829, 836 (2002). Restitution provides for the victim's economic losses caused by the defendant. Id. at 834. A valid restitution order is supported by evidence, including a victim's documentation of losses. Id.

The defendant conceded that she caused the harm,[14] and the Commonwealth properly proved the amount damaged. Mahboobe submitted a receipt for replacing the broken telephone and estimates from contractors to fix the window and bathroom door damaged by the defendant. The final determination of restitution was less than the "actual loss" proffered by Mahboobe. See Commonwealth v. Henry, 475 Mass. 117, 129 (2016) ("the amount of restitution may not exceed the victim's actual loss"). Therefore, the judge did not abuse his discretion when he ordered the defendant to pay restitution.

The defendant also contends that counsel was ineffective at the restitution hearing for not disputing that the defendant caused the damage and for not cross-examining Mahboobe about the time gap between the incident and the invoices. We evaluate whether counsel's behavior fell measurably below that which can be expected of an "ordinary fallible lawyer" and prejudiced the defendant. Saferian, 366 Mass. at 96. Counsel is not ineffective simply for not making a possible argument when that tactic had little chance of success. See Commonwealth v. Kolenovic, 471 Mass. 664, 673-674 (2015), S.C., 478 Mass. 189

---

[14] The defendant asserts that defense counsel's concession amounts to ineffective assistance of counsel. We address that argument infra. Assuming for the purpose of analysis that counsel's concession was proper, the judge did not err in relying upon it when determining restitution.

(2017) (counsel was not ineffective for not pursuing defense that was unlikely to succeed).  Mahboobe's testimony that the defendant caused the damage was consistent with her trial testimony.  Defense counsel had been unsuccessful in impeaching Mahboobe at trial and had no new tools with which to impeach Mahboobe.  Therefore, it was not unreasonable for defense counsel to concede that the defendant caused the damage.  Similarly, defense counsel was not unreasonable in not cross-examining Mahboobe about the difference between the alleged damage and the invoices she introduced to support her claim.  Counsel did attempt to impeach Mahboobe's credibility about the amount of the damage, albeit through a different tactic.  Counsel argued the invoices were not itemized or thorough enough and questioned Mahboobe about the high cost of each repair.  Counsel did so with some success, obtaining a restitution order of more than $700 less than that requested by the Commonwealth.  There was no error.

Conclusion.  None of the defendant's claims merits disturbing the jury's verdicts.

Judgment affirmed.