The defendant was convicted by a jury of an assault and battery. On appeal he contends that the judge erred in denying his request for a defense of property instruction. We affirm.
A defendant may successfully assert a defense of property defense if "(1) the defendant used only nondeadly force, and (2) the force used was 'appropriate in kind and suitable in degree, to accomplish the purpose.' " Commonwealth v. Haddock, 46 Mass. App. Ct. 246, 248-249 (1999), quoting Commonwealth v. Goodwin, 57 Mass. 154, 158 (1849). The defendant must present evidence that he was defending his property in order to raise such a defense. See Commonwealth v. Brown, 479 Mass. 163, 169 n.4 (2018) ; Haddock, supra at 248 & n.2.
Here, the trial centered on diametrically opposed versions of events. The question before us is whether, on the defendant's version of the facts, he was entitled to the instruction. See Brown, supra. Cf. Commonwealth v. Ortega, 480 Mass. 603, 610 (2018) ("we consider the evidence, from any source, and resolve all reasonable inferences in favor of the defendant").
The evidence was as follows. The Commonwealth claimed that the defendant had severely beaten a woman in his car after spending an evening together. The woman testified that after accepting a ride home from the defendant, she decided that she wanted to get out of the car. She opened the door of the moving car. The defendant grabbed her, pulled her back in the car, and refused to let her get out. He continued to drive while at the same time beating her about the head. He also slammed her face against the dashboard. There was evidence that there was blood on the interior of the car, the woman's face was swollen and bruised, and that some of her teeth were missing or broken. She also testified that while being treated for her injuries at the hospital, the defendant called and offered her money not to cooperate with the police.
The defendant maintained that the woman had stolen valuable jewelry from his mother, and that when he asked her about it, she panicked and tried to jump out of the car. The defendant testified that he had learned shortly before giving her a ride in the car he was driving that she had stolen jewelry from his mother. He started to question her about the missing jewelry, at which point she tried to jump out of the moving car. The defendant testified that he reached over to grab her to prevent her from "jumping" out of the moving car, while at the same time trying to brake to stop the car. In the confusion, the car stopped abruptly, she hit her head against the dashboard, and she suffered injuries.
The defendant was not entitled to a defense of property instruction because his testimony did not support it. In his opening statement, defense counsel told the jury that the evidence would show that the woman attempted to flee from a moving car after she had been confronted about her theft. At trial the defendant testified that he grabbed her to prevent injury, not for purposes of retrieving the allegedly stolen property.[2] In his closing argument, defense counsel reiterated this theme, arguing that after the defendant "confronted" her about the theft, "[s]he panicked and tried to jump out of a moving vehicle, injured herself, and this case came from that incident." The defendant's evidence offered an alternative version of events which, if believed, would have permitted the jury to acquit, but that evidence did not support a claim that the defendant used force to regain stolen property. See Brown, 479 Mass. at 169. Accordingly, he was not entitled to a defense of property instruction. The judge properly denied the request for the instruction.
Judgment affirmed.

On direct examination, the defendant was asked, "Now, when you held [the woman] after she was blasted back into the car by the passenger side door, what was your intent?" He responded, "First, I didn't want her jumping out of the vehicle. Second, I didn't want her on top of me. I didn't want to crash into anybody. There was a lot of things going on. This is instantaneous, it's within, you know, seconds, it's just chaos. Just, just madness." On cross-examination, the following exchange took place. Q.: "As you're confronting her about the stolen jewelry and she starts screaming, screaming, correct?" A.: "No, that's not how it happened." Q.: "Okay." A.: "I asked her about the jewelry. She said no. I said, we're going to have to go back to the house and sort it out. There was no confrontation at that time. When she got blown back in the car, she was screaming and going crazy."